UNITED STATES of America, Appellee,

v.

Dominick LOPREATO, Defendant–Appellant.

No. 1129, Docket 95–1485.

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1996.

Decided May 8, 1996.

Richard R. Brown, Hartford, CT (Brown, Paindiris & Zarella, Hartford, CT, of counsel), for Appellant.

Thomas J. Murphy, Assistant United States Attorney, District of Connecticut, New Haven, CT (Edwin J. Gale, Acting United States Attorney, Peter A. Clark, Assistant United States Attorney, District of Connecticut, New Haven, CT, of counsel), for Appellee.

Before: VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from the sentencing portion of a judgment of conviction following a jury trial by the United States District Court for the District of Connecticut, Daly, *J.* The district court sentenced appellant Dominick Lopreato to 51 months incarceration and fined him $250,000 for two counts of violating 18 U.S.C. § 1954, three counts of violating 26 U.S.C. § 7206(1), one count of violating 18 U.S.C. § 371 and two counts of violating 18 U.S.C. § 1621(1). Lopreato contends that the district court incorrectly (1) calculated his sentence by considering the money he received a bribe rather than a gratuity, (2) calculated his sentence based on the full amount of money invested and lost by the pension fund of which Lopreato was a trustee, and (3) failed to give him notice of its intent to impose an alternative fine as required by Fed.R.Crim.P. 32.

## BACKGROUND

Dominick Lopreato served as Co–Chairman and Trustee of the Connecticut Laborers' Pension Fund (CLPF), an employee pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(2) (ERISA). As such, he was subject to the strictures of 18 U.S.C. § 1954, which prohibits "an administrator, officer, trustee, custodian, counsel, agent, or employee of any employee welfare benefit plan or employee pension benefit plan" from receiving, or agreeing to receive any "fee, kickback, commission, gift, loan, money, or thing of value because of or with intent to be influenced with respect to, any of the actions, decisions, or other duties relating to any question or matter concerning such plan." 18 U.S.C. § 1954(1).

On two occasions, the Board of Trustees of the CLPF, including Lopreato, voted unanimously to invest a total of more than $5 million in securities offered by the Colonial Realty Company (Colonial). The CLPF never received a return on the investments and the principal was lost. Colonial is now in bankruptcy proceedings. The reason for this state of affairs is that the Colonial principals, Jonathan Googel and Benjamin Sisti, bled the company dry and looted it. It was not alleged that appellant knew of the fraudulent acts of Colonial and its principals.

Jonathan Googel pled guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343, one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of endeavoring to impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). Judge Daly sentenced Googel to an eight year term of incarceration. Benjamin Sisti pled guilty to two counts of bankruptcy fraud, in violation of 18

U.S.C. § 152, one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of structuring transactions to avoid reporting requirements, in violation of 31 U.S.C. § 5324 and 31 U.S.C. § 5322. Judge Daly sentenced Sisti to a nine year term of incarceration.

The thrust of the government's case against Lopreato was that Colonial partner William Candelori contacted Lopreato and proposed that the CLPF invest in the Colonial Metro Zero Coupon Mortgage Trust (Metro Zero), a debt security which Colonial was then offering. In response, Lopreato informed Jonathan Googel, through their mutual friend, Ronald Welch, that the CLPF would invest in Metro Zero, but that Lopreato would have to be paid, in cash delivered by Welch. An agreement was reached that Colonial would pay Lopreato five percent of each such CLPF investment.

Thereafter, in May of 1988, Colonial made a sales presentation to the CLPF trustees, including Lopreato, and the CLPF trustees subsequently voted to invest $2 million in Metro Zero. After the CLPF's investment was made, Welch brought Lopreato $50,000 in cash, which was 5 percent, minus money given to Welch and other necessary participants.

Lopreato then informed Googel and Welch that he would arrange more CLPF investments, but that any money necessary to pay others could no longer be taken from his 5 percent. Googel agreed. In September 1989, the CLPF trustees, including Lopreato, voted again to invest in a Colonial offering— this time $3,094,734 in the Colonial Gold Zero Coupon Limited Partnership (Gold Zero). Subsequently, Welch brought $150,000 (5 percent of $3 million) in cash to Lopreato.[1]

The jury found that Lopreato violated 18 U.S.C. § 1954(1). Lopreato does not challenge his conviction, only his sentence. He challenges the finding of the district court at sentencing that he received a bribe rather than a gratuity. While the difference between a bribe and a gratuity does not affect the propriety of Lopreato's conviction under section 1954(1), a bribe commands a higher base offense level under the Sentencing Guidelines.

Lopreato also challenges the size of the increase in his offense level under United States Sentencing Guidelines (Guidelines) § 2E5.1(b)(2). That section instructs the sentencing court to increase the defendant's offense level incrementally, tying it to the "improper benefit" of the bribe to the payer. Lopreato contends that the court incorrectly used the total amount of money invested by the CLPF in the two Colonial investments, an amount in excess of $5 million. Lopreato claims the court instead should have increased his sentence level based on the amount of money he received from Colonial.

Finally, Lopreato challenges the district court's assessment of a $250,000 alternative fine without providing notice that it intended to do so, in contravention of Fed.R.Crim.P. 32 as interpreted by the Supreme Court in *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

## DISCUSSION

### A. *Standard of Review*

▇ We review *de novo* the district court's interpretation of the Guidelines, and review the district court's factual findings for clear error. *United States v. Reese*, 33 F.3d 166, 174 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 756, 130 L.Ed.2d 655 (1995).

### B. *Was the Unlawful Payment a Bribe or Gratuity?*

▇ Lopreato challenges the district court's determination in setting a base of-

---

1. At trial, evidence was offered that related to appellant's acts arranging for another pension fund, the Albany Laborers' Pension Fund (ALPF), to invest in the Colonial Constitution Zero Coupon Limited Partnership (Constitution Zero). Because the maximum increase under section 2F1.1 of the Sentencing Guidelines is 11 levels, corresponding to a net benefit of over $5 million, United States Sentencing Guidelines (Guidelines) § 2F1.1(b)(1) (1988), we need not count or discuss the Albany Laborers' investment because the two CLPF investments alone exceed $5 million. The appellant requested that the district court apply the 1988 Guidelines, and the court granted the request, partly because of concerns over *ex post facto* problems. The government concedes in its brief that the application of the 1988 Guidelines was proper. All further references to the Guidelines refer to the 1988 Guidelines.

fense level that he received a "bribe" rather than a "gratuity" as set out in the 1988 Guidelines. Guidelines § 2E5.1(a). The Guidelines, in setting offense levels for those convicted under 18 U.S.C. § 1954, provide for a base offense level of six for receipt of a gratuity, but a base offense level of ten for receipt of a bribe. *Id.* The difference between receiving a bribe and receiving a gratuity is explained by Application Notes 1 & 2 and is reflected in the language of section 1954 itself.

Application Note 1 states that a bribe is "the offer or acceptance of an unlawful payment with the specific understanding that it will corruptly affect an official action of the recipient." Guidelines § 2E5.1, app. note 1. A gratuity, according to Application Note 2, is "the offer or acceptance of an unlawful payment other than a bribe." Guidelines § 2E5.1, app. note 2.

■ The evidence at trial showed that Lopreato informed Colonial (through its representatives) that the CLPF would invest in Colonial's securities if Lopreato was paid. The evidence showed that thereafter Lopreato arranged for Colonial to pitch its securities to the CLPF trustees, and that subsequently, Lopreato and the other trustees voted in favor of investing. Immediately following each of the two CLPF investments, Welch delivered cash payments to Lopreato, as promised by Colonial's representatives and as demanded by Lopreato. This evidence fully supports Judge Daly's finding that these payments were bribes within the meaning of Guideline § 2E5.1(a)(1).

Appellant's primary argument challenging the court's finding that the payments to appellant were bribes is that the payments were made after appellant's acts of arranging each meeting for Colonial with the CLPF trustees and after appellant voted to approve each investment. This "time of payment" argument is irrelevant under the language of section 1954 and flies in the face of a common sense interpretation of Application Note 2.

■ First, section 1954 criminalizes the receipt of money by an ERISA trustee "because of or with intent to be influenced." 18 U.S.C. § 1954. The "because of/with intent to be influenced" dichotomy corresponds with the bribe/gratuity dichotomy. *United States v. Roberto,* 801 F.Supp. 946, 953 (D.Conn. 1992) (referring to the "with intent to be influenced" language as the *"quid pro quo"* portion). Furthermore, the Background to Guidelines § 2E5.1 clearly indicates that the higher base level for receipt of a bribe applies "where the payment is the primary motivation for an action to be taken, as opposed to [a gratuity], where the prohibited payment is given *because of* a person's actions, duties, or decisions *without a prior understanding* that the recipient's performance will be directly influenced by the gift." Guidelines § 2E5.1, Background (emphases added); *see also United States v. Mariano,* 983 F.2d 1150, 1159 (1st Cir.1993) (stating that "[t]he essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a *quid pro quo"*); *United States v. Muldoon,* 931 F.2d 282, 287 (4th Cir.1991) (stating that the intent of the payer to influence the actions of the recipient is what distinguishes bribes from gratuities). The Guidelines clearly dictate that a promise to pay money, made before the unlawful act, with the understanding that the recipient will be influenced by the promise, is a bribe, not a gratuity. That is what happened here.

■ Second, it is unlawful to "agree[ ] to receive" payment with the intent to be influenced. 18 U.S.C. § 1954(1). The Colonial representatives promised to pay Lopreato money in the future if he delivered the CLPF investment. Lopreato agreed to receive the money with the intent to influence the CLPF's decision whether to invest. This evidence is fully consistent with and supports a finding that Colonial's promise of future payment was itself a bribe.

■ Lopreato further argues he did not accept a "bribe" because a bribe requires corruption—and these investments, on their face, were legitimate. This argument misses the point. The corruption in this case stemmed from Lopreato's abandonment of his fiduciary obligations in exchange for money. Lopreato's vote in support of making the investments, fairly attributable to the promise of payment by Colonial and its represen-

tatives, supports a finding that the payments were bribes.

## C. What Was the Proper Amount to Consider Under Guidelines Section 2F1.1?

■ Guidelines section 2E5.1(b)(2) instructs a sentencing court to increase a defendant's offense level "by the number of levels from the table in § 2F1.1 (Fraud and Deceit) corresponding to the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater." Guidelines § 2E5.1(b)(2). Application Note 4 of section 2E5.1 refers to section 2C1.1 for the definition of " '[v]alue of the improper benefit to the payer.' " Guidelines § 2E5.1, app. note 4. Application Note 2 of section 2C1.1, in turn, states that the value of the action received (the improper benefit) is the net value of such action, and illustrates the point with the following example:

> [I]f a $150,000 contract on which a $20,000 profit was made was awarded in return for a bribe, the value of the action received in return is $20,000.

Guidelines § 2C1.1, app. note 2. Judge Daly concluded that the net benefit to Colonial of the bribe was in excess of $5 million. This figure represented the two CLPF investments—one in Metro Zero, another in Metro Gold. Lopreato challenges the district court's determination that the full amount of the CLPF investments was a "net benefit" to Colonial. The determination of the amount of the "net benefit" is a factual question, reviewable only for clear error. *United States v. Hang,* 75 F.3d 1275, 1284 (8th Cir. 1996).

■ The first argument raised by Lopreato in various forms—that he did not intend $5 million in losses, that such a great loss was not foreseeable by him, that the district court looked to the wrong conspiracy—is that his sentence holds him vicariously liable for the fraudulent acts of Googel and his partners and is out of proportion with his culpability. This, he claims, is improper under section 2E5.1.

Unfortunately for Lopreato, the Guidelines do not require that he have intended or foreseen the losses he caused in this case.

In fact, the Guidelines plainly and specifically assign punishment at a level higher than that which correlates to the amount of the bribe received, if the benefit to the bribe payer is greater than the bribe. Guidelines § 2E5.1(b)(2).

Where a defendant's sentence is imposed or enhanced based on the "relevant conduct" of co-conspirators, the prosecution must show that the co-conspirator's conduct was reasonably foreseeable to the defendant. The Sentencing Commission explicitly so stated. Guidelines § 1B1.3, app. note 2. This is not such a case. Section 2E5.1(b)(2) measures the harm caused by defendant's acts by measuring the benefit to the bribe-payer. The section makes no mention of foreseeability, and the Commission clearly knew how to impose such a requirement.

■ Second, Lopreato urges us to find that the net benefit to the bribe payer in this case is indeterminable, because the profit made on the CLPF investment was not proven. Thus, Lopreato would have us order him resentenced under Guidelines § 2E5.1(b)(2), using the amount of money he received instead of the full amount invested by the CLPF. *See, e.g., Muldoon,* 931 F.2d at 289 (holding that where the profit made on a contract obtained through bribery is not determinable from the evidence, the amount of the bribe is the proper amount to use in increasing the offense level).

Appellant argues that the CLPF, in fact, received some value in exchange for its money—namely, a promise to repay the bond on certain conditions. However, under the circumstances of the Metro Zero and Metro Gold investments, it was not clearly erroneous for Judge Daly to conclude that, at the time of the investment, the securities had *no* value, that the CLPF did not and likely never would receive any money back from Colonial, and that the full amount of the CLPF investments was therefore the net benefit to Colonial and its principals.

Judge Daly's finding is supported by evidence that Googel and his partners were actively looting, and the collateral behind the securities was deeply subordinated. Indeed, at the time of the CLPF investment in the

Gold Zero securities, the offering was over-subscribed—further diluting the already razor thin collateral. The government need not prove that the securities were totally worthless at the time of issuance to prove the full amount of the investments was a net benefit to Colonial and its principals. Rather, the sheer unlikeliness of any return of the principal because of the ongoing illegal acts of the bribe payers was sufficient to support a finding that the entire investment was a net benefit to the bribe payers.

We need not rule on the government's argument that the net benefit to a borrower who repays nothing is *always* the full amount of the loan. It is clear from the evidence here that there was no benefit to the CLPF from Colonial's promise to repay. Lopreato delivered the CLPF's pension funds to the wolves, and cannot now distance himself from the carnage.[2]

**D.** *Was Lopreato Denied Notice of the Court's Intention to Impose the Alternative Fine?*

■ Lopreato also challenges the district court's imposition of the $250,000 alternative fine pursuant to 18 U.S.C. § 3571(b)(3), on the ground he was not given prior notice that the court was considering such a departure as required by Fed.R.Crim.P. 32. This argument relies on the Supreme Court's decision in *Burns,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123.

In *Burns,* the Court held that Rule 32 requires a sentencing court to provide the parties with prior notice of its intent to depart from the Guidelines *sua sponte. Id.* at 136, 111 S.Ct. at 2186. The Court explained that "[b]ecause the Guidelines place essentially no limit on the number of potential factors that may warrant a departure ..., no one is in a position to guess when or on what grounds a district court might depart, much less to 'comment' on such a possibility in a coherent way." *Id.* at 136–37, 111 S.Ct. at 2186.

This case is somewhat different than *Burns* in that the presentence report (PSR) prepared by the probation officer indicated the alternative fine was available on these counts. In *Burns,* the sentencing court had *sua sponte* departed upward, when no grounds for doing so were listed in the PSR. *Id.* at 135, 111 S.Ct. at 2185. Thus Lopreato's invocation of *Burns* rings somewhat hollow. Indeed, the *Burns* Court distinguished "the ordinary case, [in which] the presentence report or the Government's own recommendation will notify the defendant that an upward departure will be at issue." *Id.* Although the PSR in this case stated only that the alternative fine was available, without supporting facts, Lopreato was significantly more aware the court might depart upward than was the defendant in *Burns.*

■ Regardless, even if notice was lacking under *Burns,* this error was harmless beyond a reasonable doubt. *See United States v. Paslay,* 971 F.2d 667, 674 (11th Cir.1992) (applying harmless error analysis to district court's failure to give prior notice of upward departure). The main argument Lopreato claims he would have made against imposition of the alternative fine had he been afforded notice was that he was already subject to lawsuits from the CLPF and Colonial's trustee in bankruptcy. However, the court clearly contemplated Lopreato's liability to Colonial's trustee in bankruptcy and to the CLPF. It stated, in choosing not to order restitution, that "in view of the fine

---

2. Furthermore, the district court gave an alternative ground for sentencing appellant on the basis of the $5 million. It stated that it would have found that

the lesser figure failed to adequately reflect the seriousness of [appellant's] offenses. In accordance with the background to Section 2E5.1, which provides, and I quote, "The seriousness of the offense is determined by several factors, including the value of the bribe or gratuity and the magnitude of the loss resulting in the transaction," I would have departed upward. In this case, the magnitude of the loss to the [CLPF], without considering the Albany trans-

action, exceeds five million dollars by almost a hundred thousand dollars. Thus, I would have departed upward to the same level upon which I am sentencing you.

Appellant challenges the propriety of this alternative ruling on the ground that he was not afforded· prior notice of the court's intention to depart upward as required by Fed.R.Crim.P. 32. Because we affirm the district court's determination that the full amount of the CLPF investments was a "net benefit" to Colonial and its principals, we need not comment on the effect of any lack of prior notice on the propriety of the alternative ruling.

and the bankruptcy trustee's claim, and because I do not want to make a preference out of the Union over any other claimant in the bankruptcy proceedings, I do not order that restitution be made." Any argument that the court did not consider Lopreato's other potential liabilities is belied by this statement. Thus, any error was harmless beyond a reasonable doubt.

## CONCLUSION

For the reasons stated above, the sentence imposed by the district court is affirmed and the judgment of conviction is affirmed.