UNITED STATES of America,
Appellee–Cross–Appellant,

v.

Jorge RIVERA, aka "G" or "Pekino,"
Ralph Moreno, aka "Ralphie," Nelson
Estremera, aka "Danger" and Amador
Rivera, aka "Beast," Defendants–Appellants,

William Mendez, aka "Pep," or "Pep-
peroni," Defendant–Appellant–
Cross–Appellee.

No. 320, Docket No. 97–1223.

United States Court of Appeals,
Second Circuit.

Argued April 12, 1999.

Decided Sept. 14, 1999.

Lewis H. Chimes, New Haven, CT (Garrison, Phelan, Levin–Epstein Chimes & Richardson, P.C., on the brief), for Appellant Nelson Estremera.

John H. Durham, Deputy United States Attorney, New Haven, CT (Stephen C. Robinson, United States Attorney for the District of Connecticut, Peter D. Markle and Anthony E. Kaplan, Assistant United States Attorneys, Joel B. Casey, Paralegal Specialist, on the brief), for Appellee–Cross-Appellant.

Before: VAN GRAAFEILAND, JACOBS and STRAUB, Circuit Judges.

JACOBS, Circuit Judge:

Defendant-appellant Nelson Estremera appeals from the judgment of the United States District Court for the District of Connecticut (Dorsey, *J.*), convicting him, following a plea of guilty, of one count of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. Estremera argues that when calculating his sentence, the district court erred by (i) failing to depart downward from the Sentencing Guidelines range by reason of Estremera's "violent and tumultuous childhood"; and (ii) departing upward as to the term of supervised release as a hedge against downward departures affecting the term of imprisonment.[1]

## DISCUSSION

### I. Childhood Abuse

Section 5K2.0 of the Sentencing Guidelines provides the sentencing court with discretion to depart from the applicable Guidelines range if " 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken

---

1. We have disposed of the remaining appeals by summary orders issued on this same date.

into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0, p.s. (quoting 18 U.S.C. § 3553(b)). Section 5H1.3 cautions that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)." U.S.S.G. § 5H1.3. Estremera contends that § 5H1.3 leaves open the possibility of a downward departure by reason of abuse he suffered as a child, and he seeks a remand for resentencing on the ground that the district court misunderstood its power to grant such a departure. *See United States v. Haynes,* 985 F.2d 65, 68 (2d Cir.1993) (holding that district court's refusal to downwardly depart is appealable only when the court (i) misapplied the Guidelines; (ii) misapprehended its authority to depart; or (iii) imposed an illegal sentence).

▮ We first consider the government's claim that Estremera forfeited his right to such a departure by failing to seek it at sentencing. Federal Rule of Criminal Procedure 51 provides that, in order to preserve an objection for appeal, a party must "make[ ] known to the court the action which that party desires the court to take ... and the grounds therefor." Fed. R.Crim.P. 51.[2] We have held objections to be adequate under Rule 51 where they "fairly alert[ ] the court and opposing counsel to the nature of the claim." *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180 (2d Cir.1990). "[T]o communicate the nature of a claim, a party does not have to present precise or detailed legal arguments." *United States v. Sprei,* 145 F.3d 528, 533 (2d Cir.1998) (internal quotation marks omitted).

▮ Estremera's argument at sentencing did not employ the term "mental or emotional conditions," or cite § 5H1.3 for the proposition that a departure for such a condition may be available. However, he did detail the circumstances of his "violent and tumultuous" upbringing, which (he claimed) "led to his extensive criminal history and involvement in gangs," and he sought a downward departure on that basis under § 5K2.0 of the Guidelines.

We think that Estremera's assertions fairly alerted the district court and the government to the nature of his claim, *i.e.,* that he was a candidate for leniency because he was warped by episodes of childhood abuse. *See, e.g., Rodriguez–Gonzalez,* 899 F.2d at 180 ("Although appellant failed to couch his objection in the specific terms 'double jeopardy,' the nature of his argument fairly alerted both the court and the prosecutor to his constitutional claim ....."). We are reluctant to treat as forfeiture Estremera's invocation of § 5K2.0 (under which he sought relief), rather than § 5H1.3 (which, citing (*inter alia*) § 5K2.0, limits such relief to circumstances other than the ordinary). Moreover, "the responses of the court and the government indicate that they were cognizant of the nature of [the] claim." *Rodriguez–Gonzalez,* 899 F.2d at 180. We therefore conclude that Estremera preserved this argument for appellate review.

▮ As noted, the Guidelines foreclose any downward departure for lack of youthful guidance. *See* U.S.S.G. § 5H1.12 ("Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range."). Several of our sister circuits have nevertheless held that a downward departure may be appropriate in cases of extreme childhood abuse. *See United States v. Pullen,* 89 F.3d 368, 372 (7th Cir.1996), *cert. denied,* 519 U.S. 1066, 117 S.Ct. 706, 136 L.Ed.2d 627 (1997);

---

**2.** Rule 51 "governs objections made to sentencing orders." *United States v. Sprei,* 145 F.3d 528, 533 (2d Cir.1998).

*United States v. Clark,* 8 F.3d 839, 845–46 (D.C.Cir.1993); *United States v. Roe,* 976 F.2d 1216, 1218 (9th Cir.1992); *United States v. Vela,* 927 F.2d 197, 199 (5th Cir. 1991); *see also United States v. Deigert,* 916 F.2d 916, 919 (4th Cir.1990). Explicitly or implicitly, these opinions have relied on an inference drawn by negative pregnant from § 5H1.3, which states that "[m]ental and emotional conditions are not *ordinarily* relevant" in considering departures. U.S.S.G. § 5H1.3, p.s. (emphasis added).

■ It seems beyond question that abuse suffered during childhood—at some level of severity—can impair a person's mental and emotional conditions. *See Roe,* 976 F.2d at 1218 (stating that "victims of [child] abuse frequently experience profound feelings of inadequacy, isolation, confusion, low self-esteem, and guilt" and that "[e]ach of these effects constitutes either a mental or emotional condition"); *Vela,* 927 F.2d at 199 (recognizing that "[a] defendant's family history of incest or related treatment" can "cause[ ][the] defendant to incur a mental or emotional condition that affects criminal conduct"). Moreover, although under § 5H1.3 a defendant's mental and emotional condition is "ordinarily irrelevant," we have held that it can be taken into account at sentencing in situations that are "extraordinary." *See United States v. Lara,* 905 F.2d 599, 603 (2d Cir.1990); *see also United States v. Barton,* 76 F.3d 499, 501–02 (2d Cir.1996) (recognizing authority to depart for "extraordinary mental or emotional condition" but remanding because "the record thus far developed d[id] not support the Court's grounds for a departure"). We conclude that in extraordinary circumstances (the parameters of which we leave to future development), district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense.

Seeking to avoid a remand, the government maintains that we should presume that the district court was aware of its ability to depart under § 5H1.3, and should therefore conclude that the court's failure to so depart resulted from its finding that the circumstances of Estremera's upbringing do not warrant such a departure.

■ We generally "apply a presumption that district judges understand the much-discussed processes by which they may, in circumstances permitted by law, exercise discretion to depart from the sentence range prescribed by the Guidelines calculus." *United States v. Brown,* 98 F.3d 690, 694 (2d Cir.1996) (per curiam). However, that presumption can be overcome. "Caution is warranted, for example, in cases where the judge's option turns on an obscure point of law," *United States v. Rivers,* 50 F.3d 1126, 1132 (2d Cir.1995), or where there is "clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority," *Brown,* 98 F.3d at 694. That risk may arise where the ground for departure was recently adopted in this Circuit. *See United States v. Ekhator,* 17 F.3d 53, 55–56 (2d Cir.1994) (remanding for resentencing where, *inter alia,* at the time of sentencing, the ground of departure—although approved in other circuits—had been recognized by this Circuit only recently); *Brown,* 98 F.3d at 694 n. 6 (construing *Ekhator* to stand for the proposition that remand may be warranted where "the sentencing judge's comments ... were 'at best ambiguous,' and the basis of th[e] departure ... had only just been approved *by this Court* at the time of sentencing" (emphasis added)).

■ *A fortiori,* we cannot assume that a district court appreciated a principle that (as here) is announced on appeal. At the time of sentencing, this Circuit had not said whether, under § 5K2.0 and subject to § 5H1.3, a court may downwardly depart in cases of extreme childhood abuse. That result is not compelled by the text of

§ 5H1.3, which implies the availability of a downward departure by reason of "mental and emotional conditions" in extraordinary circumstances but does not specify childhood abuse (or any other potential cause) as such a circumstance. There is therefore no basis for presuming here that the district court was aware that it had the ability to downwardly depart in cases of extreme childhood abuse.

■■■ We nevertheless decline to remand for resentencing. Estremera was afforded an opportunity in the district court to develop a factual record to support the departure he seeks. Based upon the facts adduced, a departure in reliance upon § 5H1.3 would have constituted an abuse of discretion. *See United States v. Payton*, 159 F.3d 49, 61 (2d Cir.1998) ("A district court's decision to depart from the Guidelines is reviewed for abuse of discretion."). A remand for resentencing is therefore unnecessary.

Estremera maintains that his case is extraordinary within the meaning of § 5H1.3 because he was born of a familial rape, because he spent time in foster homes, and because his stepfather was killed when Estremera was eight. These unfortunate circumstances demonstrate that Estremera suffered a lack of guidance as a youth—a factor that the Guidelines expressly prohibit a sentencing court from considering. *See* U.S.S.G. § 5H1.12, p.s.

Estremera also "reports having been beaten a lot, having his hands burned, being made to kneel on rice in the corner, and being struck with extension cords." These episodes of corporal punishment could conceivably rise to a showing of abuse. But Estremera has failed to allege and show, as required for a § 5H1.3 departure, that any abuse he may have suffered rose to the extraordinary level that can be assumed to cause mental or emotional pathology. We decline to set a standard for determining when that level is reached, although the cases at the extreme are easy to classify. *See, e.g., Roe*, 976 F.2d at 1218 (finding that district court "clearly erred in

finding that the tragic circumstances of [defendant's] abusive upbringing were not extraordinary," where the defendant "lived with her drug-addicted mother and her mother's boyfriend, who was a narcotics dealer," for much of her childhood; where the mother's boyfriend "routinely raped and sodomized her," "savagely beat [her], sometimes as often as once a day, with belts, extension cords, and coat hangers," and subjected her to other perverse degradations; where, after running away from home at age 12, the defendant had been "forced to work as a prostitute" and "brutally beaten by a series of pimps, customers, and boyfriends"; and where one psychiatrist reported that the defendant's "abuse was so severe she had become 'virtually a mindless puppet' "). We hold only that Estremera falls clearly short of the requisite showing.

Estremera maintains only that the abuse "was a significant and mitigating factor in his subsequent behavior and poor exercise of judgment." But as much could be said of every criminal defendant who has suffered abuse as a child, or corporal punishment at the hands of benighted parents. *See Vela*, 927 F.2d at 199 ("Childhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition."). Estremera has therefore failed to adduce evidence that would support a finding that his case "fall[s] outside the heartland of typical cases." *Payton*, 159 F.3d at 60. We therefore reject Estremera's claim that he was entitled to a departure under § 5H1.3.

## II. Supervised Release

The challenge in calculating Estremera's criminal history, as the sentencing court analyzed it, was that certain factors suggested a high likelihood that Estremera would commit future crimes, while other factors suggested that Estremera's unmodified criminal history category of VI "overstate[d] his risk of recidivism." The court elected to lower the criminal history

category from VI to IV; at the same time, the court imposed a five-year upward departure in the term of Estremera's supervised release as a "community[ ] hedge" against possible recidivism:

> So that if after a relatively short sentence, in relation to all of what's involved, we find that he's been given more of a break than he really was entitled to, because he reverts to form and commits further criminal conduct, at that point his supervised release can be revoked and he can be sent back to jail.

 "[W]e review a district court's interpretation and application of the Guidelines de novo, and its findings of fact for clear error." *United States v. Martinez–Santos,* 184 F.3d 196, 198 (2d Cir. 1999) (citation omitted). We will overturn a district court's application of the Guidelines to the facts only if we conclude that there has been an abuse of discretion. *See United States v. Fernandez,* 127 F.3d 277, 283 (2d Cir.1997) (citing *United States v. Santiago,* 906 F.2d 867, 871 (2d Cir.1990)).

In two closely related arguments, Estremera contends that this Court should overturn the upward departure with respect to the term of supervised release because "[a]n individual's risk of recidivism is properly taken into account under the guidelines relating to that individual's criminal history," and because the upward and downward departures are inconsistent.[3] These arguments are premised on a misunderstanding of the relationship between imprisonment and supervised release under the Guidelines, and of the discretionary power of a district court.

 Imprisonment and supervised release are both designed to prevent recidivism.[4] Although "issues of recidivism in sentencing are [generally] dealt with through the criminal history categories," a sentencing court has power to effect a departure from the Guidelines range for supervised release "in order to craft a sentence that appropriately consider[s] [the defendant's] potential for recidivism and the perceived threat [the defendant] pose[s] to society." *United States v. Mora,* 22 F.3d 409, 414 (2d Cir.1994) (affirming district court's decision to account for risk of recidivism by upward departure in term of supervised release, not imprisonment). A sentencing court's departures with respect to supervised release need not mirror the court's departures with respect to the term of imprisonment. *See United States v. Marquez,* 941 F.2d 60, 64 (2d Cir.1991).

 The government has not appealed Estremera's sentence, so the court's decision to downwardly depart with respect to Estremera's criminal history category is not before us. We therefore assume the soundness of that ruling, and consider only whether the upward departure with respect to supervised release was warranted

---

**3.** To the extent that Estremera contends that the upward departure was erroneously based upon the seriousness of the offense, we reject this argument. Having reviewed the sentencing transcript, we find that in upwardly departing with respect to supervised release, the court was concerned with the possibility of recidivism.

**4.** With respect to imprisonment, see 18 U.S.C. § 3553(a)(2)(C) (stating that, in imposing sentence, the court shall consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"); U.S.S.G. § 4A1.3 (authorizing courts to upwardly depart with respect to a defendant's criminal history category where that category does not adequately reflect "the likelihood

that the defendant will commit other crimes"). With respect to supervised release, see 18 U.S.C. § 3583(c) (providing that in determining the length of a term of supervised release, the court shall consider (*inter alia*) the factor set forth in § 3553(a)(2)(C), *i.e.,* "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"); *id.* § 3583(d) (providing that, as a condition of supervised release, the court must require the defendant not to "commit another Federal, State, or local crime during the term of supervision"); *id.* § 3583(e)(3) (stating that supervised release can be revoked if the court finds "by a preponderance of the evidence that the defendant violated a condition of supervised release").

as a hedge against the relatively lenient term of imprisonment that was actually imposed. In view of the early start to Estremera's criminal career eighteen years before, and the fact that his law-abiding years largely coincided with a previous term of imprisonment, the upward departure was not an abuse of discretion.

■ Nor are we persuaded by Estremera's claim that the upward departure was fatally inconsistent with the downward departure. The sentence imposed by the district court reflected its finding that the risk of recidivism was high enough to warrant a prolonged period of supervised release, but not so high as to warrant the range of imprisonment that was contemplated by Estremera's uncorrected Guidelines range. The several objectives of criminal punishment under the Guidelines are "deterrence, incapacitation, just punishment, and rehabilitation." U.S.S.G. ch. 1, pt. A.2. More or less, all three are concerned with recidivism, but attack it in various overlapping ways. There is no doubt that imprisonment is the most reliable check on recidivism, at least during the defendant's time in jail; but it is just as clear that in certain cases supervised release is a more reliable way to achieve just punishment and rehabilitation. The district court's decision to hedge the reduction in criminal history by the increase in supervised release is a matter of fine-tuning rather than inconsistency.

■ Estremera's final argument is that the departure should be overturned because the district court gave no notice of its intention to depart prior to the sentencing hearing. We disagree. A failure of notice may be harmless error unless the defendant can specify arguments he would have made that the district court did not consider. *See United States v. Lopreato,* 83 F.3d 571, 577–78 (2d Cir.1996). Here, the district court recognized that its rea-

sons for upwardly departing were potentially in tension with its reasons for reducing the term of Estremera's imprisonment. Tr. at 83 ("Well, I have trouble justifying a downward departure on the incarceration and an upward departure on the period of supervised release."). It nevertheless determined that the likelihood that Estremera would commit future crimes was high enough to warrant an upward departure with respect to supervised release. The court thus considered—and rejected—the arguments that Estremera would have raised had he received notice of the intention to depart. Just as important, Estremera cannot plausibly argue that he would have opposed the upward departure in supervised release if (as is obvious) the upward departure was the hedge (and therefore the off-set) for the downward departure that reduced his prison sentence.[5] Accordingly, the failure to provide notice was harmless. *See Lopreato,* 83 F.3d at 578.

### CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.

---

5. Although the district court stated at the conclusion of the sentencing hearing that the downward departure will stand even if this Court invalidates the upward departure, the defendant would have had little incentive at the outset to argue against a ruling that had the reciprocal effect of reducing his prison sentence.