UNITED STATES of America,

v.

**Grace KIM, Defendant.**

**No. 03 CRIM.774 VM.**

United States District Court, S.D. New York.

April 7, 2004.

Joseph A. Bondy, Law Offices of JOseph A. Bondy, Mayo Schreiber, Jr., New York City, Michael Griffith, Amagansett, NY, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Defendant Grace Kim ("Kim"), who pled guilty to bank fraud, moves for a downward departure from the otherwise applicable sentencing guidelines range of 30 to 37 months on the following grounds: (1) diminished capacity; (2) extraordinary mental and emotional circumstances; (3) extraordinary acceptance of responsibility; (4) post-offense rehabilitation; and (5) the combination of these factors. For the following reasons, the motion is denied.

### I. BACKGROUND

Over a period of about three and one-half years, Kim, a part-time bookkeeper, forged 54 of her employer's checks, totaling over $400,000, and used those checks to pay her credit card bills. Kim was employed part-time at the offices of a Manhattan orthopedic surgeon, where she

had worked since 1989, when she was still in college. She began forging the office's checks in late 1998, and in April 2002, an office manager discovered two missing checks, eventually leading to Kim's arrest and guilty plea. Kim has paid back the money she stole, except for about $40,000 in legal fees owed to her former employer. During the time she was forging checks, Kim was also employed full-time as a marketing manager at Dolce & Gabbana at an annual salary of $85,000.

By all accounts, Kim is a psychologically troubled woman who has suffered from emotional trauma. Her family and psychological history form the core of her motion for downward departure. Kim reports that both her father and uncle raped her at a young age, and that her father physically abused her mother. She also reports that her parents would often abandon Kim and her siblings, sometimes for days at a time. Kim first attempted suicide in high school. She began psychotherapy in 1991 at age 24. Kim was taken to a hospital in 1999 because she was contemplating suicide again, and she has since been taking anti-depressants.

In November 2002, after her crimes, Kim began seeing psychotherapist Kate Scharff ("Scharff") who diagnosed Kim with Post–Traumatic Stress Disorder ("PTSD"). In a letter submitted to the Court, Scharff states, "In 20 years of practice, I have rarely treated a patient who suffered more early trauma, in more life areas, than this patient." (Letter from Joseph A. Bondy, dated Feb. 19, 2004, Ex. A, at 1.) The letter connects Kim's mental problems to her crimes in the following manner:

It is impossible to overestimate the way in which Grace was programmed by her parents to link financial success with acceptability. From the time that she was a small child, they repeatedly told her that they only cared about her to the extent that she achieve material success. Ms. Kim began the criminal behavior that led to her arrest after the dissolution of an abusive marriage. Suicidal and heavily in debt, panicked that she would lose the love and support of her family, and in a dissociated state, she made the only choice that she felt able to make to avoid terrifying feelings of loss and abandonment. It is important, I think, to note that with the stolen money Ms. Kim mainly bought gifts for her boyfriend and family; the people whose affections she felt that she had to buy.

*Id.* Scharff also states that Kim's crimes were "directly related" to Kim's past trauma and recommends that Kim not be incarcerated. *Id.* Finally, Scharff notes that Kim's prognosis for recovery is excellent, if Kim is able to avoid prison. Kim has also been under the care of a psychiatrist, Dr. Nancy Bakalar ("Bakalar"), who diagnosed Kim with severe depression. Bakalar agrees with Scharff that, if Kim were to be permitted to remain under treatment and out of prison, her prognosis for recovery would be excellent.

Kim now lives with her sister and brother-in-law in Maryland. She volunteers at her brother-in-law's medical clinic, and at an elementary school in Washington, D.C.

## II. DISCUSSION

■■■ Kim first seeks a downward departure on the ground that her depression and PTSD caused her to have a "significantly reduced mental capacity" at the time of the offense. *See U.S. Sentencing Guidelines Manual* § 5K2.13 (2001) ("U.S.S.G.").[1] Diminished capacity is an

---

[1] The parties and the Court agree that the November 2001 Guidelines Manual applies to this case. *See* U.S.S.G. § 1B1.11(b)(1).

"encouraged" basis for departure because it is a factor the Sentencing Commission generally was "not ... able to take into account fully in formulating the guidelines." *Id.* § 5K2.0; *see also Koon v. United States*, 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In relevant part, a defendant has "significantly reduced mental capacity" when the defendant "has a significantly impaired ability to ... control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n. 1. The Court may depart on this basis as long as Kim demonstrates, by a preponderance of the evidence, that (1) she suffered from a diminished capacity and (2) there is "a causal link between that reduced capacity and the commission of the charged offense." *United States v. Prescott*, 920 F.2d 139, 145 (2d Cir.1990).

The Court is not persuaded that Kim has sufficiently demonstrated a causal link between her alleged impairment and the crimes charged. The only evidence connecting Kim's alleged diminished capacity to her crime is Scharff's letter, which opines that Kim's family pressures towards financial success compelled Kim to act as she did. Assuming that Kim actually suffers from a significant compulsion to appear financially successful to her family, the Court notes that the alleged compulsion would only relate to the *motive* for her bank fraud, not to the bank fraud itself – *i.e.*, Kim does not suggest that she suffers from a disorder causing her to forge checks. Courts are divided on how to address a motion for downward departure in instances, such as here, where the diminished capacity is "indirect," or "collateral" to the criminal conduct. *See generally* Note, *Diminished Capacity Departures for Compulsive Gambling: Punishing the Pathological or Pardoning the Common Criminal?*, 2003 B.Y.U. L.Rev. 385, 398–406 (2003).

One approach would only permit departure in cases where the disorder pertains specifically to the criminal conduct at issue. A recent decision from this District suggests that this view is best because the implications of a broader view "would be vast":

Defendants charged with a wide array of crimes might seek downward departures because they were, for example, compulsive shoppers who turned to stealing, running a house of prostitution, or insider trading, among other crimes, only after spending all of their assets. If the Sentencing Commission really means to make downward departures available in cases like this one and those posited, it should say so.

*United States v. Grillo*, No. 03 Cr. 249, 2003 WL 22999219, at *2 (S.D.N.Y. Dec.22, 2003); *see also United States v. Miller*, 146 F.3d 1281, 1286 (11th Cir.1998) (denying downward departure for defendant convicted of trading in child pornography where defendant's only interest in trading in child pornography was as a means to obtain, and satisfy his impulsive desire for, adult pornography). The Sixth Circuit has taken the opposite view, noting that the guideline text itself "does not distinguish between [significantly reduced mental capacities] that explain the behavior that constituted the crime charged and [those] that explain the behavior that motivated the crime." *United States v. Sadolsky*, 234 F.3d 938, 943 (6th Cir.2000) (upholding diminished capacity downward departure for defendant, a compulsive gambler, who defrauded his employer to pay off his gambling debts).

The Court finds most persuasive a third, intermediate view, put forth in the Seventh Circuit's decision in *United States v. Roach*, 296 F.3d 565 (7th Cir.2002). The *Roach* case involved facts very similar to the present case: the defendant "embez-

zled more than $240,000 from her employer over a three-year period ... in order to repay significant debt incurred by her excessive purchases of jewelry and clothes, and to conceal that debt from her husband." *Id.* at 566. She sought a diminished capacity downward departure on the ground that she compulsively shopped to relieve her depression. *Id.* The *Roach* panel rejected any categorical rule about "collateral" or "indirect" disorders and instead framed the diminished capacity inquiry as whether and to what extent the defendant's mental capacity affected the defendant's conduct *at the time of the offense.* *Id.* at 571. That panel correctly pointed out that classifying the compulsion as "collateral," or "indirect," "does not tell us anything about the strength of that connection or indeed whether the impairment has any relevance in determining the appropriate sentence." *Id.* at 570. By focusing on the time of the offense conduct, the panel suggested that a defendant would be less likely to demonstrate a diminished capacity where the offense conduct is collateral to the impairment, but the panel appropriately stopped short of adopting a *per se* rule not found in the guidelines. *Id.* Under the *Roach* formulation, a diminished capacity, whether direct or indirect with respect to the offense conduct, may provide a basis for departure only if the evidence suggests that the compulsion "significantly impaired" the defendant's ability to control the offense conduct at the time of the offense. *Id.*

On the facts of this case, the Court is not persuaded that Kim's alleged compulsion is sufficiently connected to the crimes to which she has pled guilty. Nothing in Kim's submissions persuasively explains how her alleged disorder amounted to a "significantly impaired ability" to control herself on the 54 occasions spanning nearly three and one-half years in which she forged her employer's checks. U.S.S.G. § 5K2.13 cmt. 1. Even assuming Kim's

compulsion sufficiently accounts for her incurring substantial credit card debt in the first place, Kim's means of addressing that debt – committing bank fraud – constitutes a separate act which is at least one step removed from the allegedly compulsive purchasing. To be sure, the Court recognizes that Kim likely committed this crime in order to continue making purchases beyond her means, and the Court also recognizes that her compulsion likely contributed to the credit card debt which gave her all the more reason to continue with her fraudulent scheme.

■ However, the fact that she had a strong reason to commit bank fraud places Kim, at best, in no different position from that of ordinary defendants "who commit crimes in an attempt to extricate themselves from difficult financial circumstances in which they find themselves through no fault of their own." *United States v. Jones,* No. 01 Cr. 457, 2002 WL 449014, at *2 (N.D.Ill. Mar.22, 2002) (denying diminished capacity downward departure where defendant, a pathological gambler, stole from her employer to pay gambling debts). The sentencing guidelines explicitly discourage "personal financial difficulties" as a consideration for downward departure, *see* U.S.S.G. § 5K2.12, and the Court is reluctant to interpret the diminished capacity guideline so broadly as to clash directly with this neighboring guideline provision.

In sum, the fact that Kim's compulsion may have led her to the precarious position of being deeply in debt does not, without more evidence, lead the Court to conclude that the same compulsion sufficiently accounts for whatever illegal means she may have chosen to pull herself out of that debt. *See Roach,* 296 F.3d at 572 ("[T]he analytic leap from a shopping compulsion to a significantly impaired ability to control fraudulent conduct spanning

three years is too great to make without supporting reasons or evidence."). Accordingly, the Court concludes that Kim is not entitled to a downward departure on the basis of an alleged diminished capacity.[2]

██ Kim next seeks a downward departure because she suffered extraordinary childhood abuse. A defendant's mental or emotional condition is a "discouraged" basis for departure, *see* U.S.S.G. § 5H1.3, and thus the Court may depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case." *Koon*, 518 U.S. at 96, 116 S.Ct. 2035; *see also* U.S.S.G. § 5K2.0. The Second Circuit has held that "in extraordinary circumstances ... district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense." *United States v. Rivera*, 192 F.3d 81, 85 (2d Cir.1999). To be a proper basis for departure, the abuse must "r[i]se to the extraordinary level that can be assumed to cause mental or emotional pathology." *Id.* at 86.

First, for the reasons explained above in connection with the diminished capacity ground for departure, the Court is not persuaded that there is a sufficient causal connection, as required by *Rivera*, between Kim's mental condition and her crime, so as to justify departure. The Court notes that, after Kim's childhood abuse but before the present offense, she was able to complete college, earn additional credits at the Fashion Institute of Technology, and hold stable jobs at a relatively high pay, without ever resorting to criminal conduct.

Second, without minimizing the abuse Kim has suffered, the Court concludes it does not meet the exacting standards for a downward departure. The Second Circuit has explicitly "decline[d] to set a standard" for determining when childhood abuse reaches such an extraordinary level so as to justify departure. *See Rivera*, 192 F.3d at 86. These determinations are by their nature delicate and imprecise because it is difficult to gauge, or place on a scale, various levels of childhood abuse. In *Rivera*, a case useful at least as a guidepost, the defendant suffered, among other things, frequent childhood beatings, had his hands burned, and was struck with

2. Instead of responding to the legal points the Government raised on this issue in opposition to Kim's motion for a downward departure, Kim's "reply" brief consists of a second letter from Bakalar, the psychiatrist who briefly treated Kim beginning in late 2002. Bakalar performed a new examination on Kim on March 24, 2004 (after the initial letter briefs were filed) and reached a conclusion previously unmentioned in this case: that Kim suffered from a compulsion to forge the checks at issue here. As an initial matter, this submission is procedurally improper because it raises new arguments in reply. *See, e.g., Playboy Enters., Inc. v. Dumas*, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997). In any event, Bakalar's conclusions are unpersuasive. As evidence that Kim was compelled to commit these crimes, Bakalar points out that Kim: (1) reported suffering anxiety during the crimes; (2) forged checks even beyond what was necessary to pay off her debts; (4) considered the money a "loan" and intended to repay that loan; and (5) committed her crimes while gainfully employed and earning nearly $85,000 per year. Conceding that the Court has no psychiatric expertise, the Court cannot possibly conclude that these factors add up to a "significantly reduced mental capacity" under the relevant legal test. Kim's reported anxiety is consistent with a guilty conscience and the fact that she stockpiled some of her ill-gotten gains while earning a substantial income is evidence that Kim is more, not less, blameworthy. Without more hard evidence or persuasive explanation connecting these facts to the suggested counterintuitive conclusion, the Court will not credit Bakalar's submission.

extension cords, yet the Second Circuit found that the evidence fell *"clearly* short of the requisite showing" for a downward departure. *Id.* at 86 (emphasis added). By contrast, a court in this District granted a downward departure to a nineteen year-old defendant who suffered, among other things: watching his stepfather frequently handcuff and beat his mother; being beaten with a belt soaked in alcohol; watching his mother work as a prostitute at his stepfather's urging; having his mother incarcerated for five years; and having his stepfather commit suicide by hanging. *United States v. Ramirez,* No. 98 Cr. 927, 2000 WL 759779, at *1 (S.D.N.Y. June 12, 2000). The Court finds that the abuse Kim has suffered is troubling, but, in this Court's review of the caselaw and comparable cases it has considered, childhood abuse of similar severity to what Kim has suffered is not atypical of persons who end up committing crimes. *Cf. United States v. Vela,* 927 F.2d 197, 199 (5th Cir.1991) ("Childhood abuse and neglect are often present in the lives of criminals."). The Court declines to depart downwardly on the basis of Kim's childhood abuse.

■ Kim next seeks a downward departure on the ground of her extraordinary acceptance of responsibility. Immediately after being confronted with her crime, Kim tendered checks to her employer totaling $168,000. She has since repaid all but about $40,000 of the money she stole. Acceptance of responsibility is a "discouraged" basis for departure because the Court will already account for this factor in downwardly adjusting her offense level by three levels pursuant to guideline § 3E1.1. Thus, Kim may be entitled to additional leniency only if "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035; *see also* U.S.S.G. § 5K2.0.

While the Court finds Kim's repayment efforts laudable, they are not so extraordinary as to justify departure. Kim accepted responsibility only after being caught; she never accepted responsibility for her scheme during the almost three and one-half years during which her fraud went undetected. As one court has remarked, cooperation is "not an unusual response on the part of a defendant who is caught red-handed and who realizes that cooperation is the only means of salvaging her situation." *Charles v. United States,* No. Civ. A. 02–12312, 2003 WL 21184022, at *5 (D.Mass. May 20, 2003); *cf. United States v. Rogers,* 972 F.2d 489, 491 (2d Cir.1992) (remanding for consideration of extraordinary acceptance of responsibility where defendant, who robbed a bank while high on crack, voluntarily turned himself in the next day in hopes of getting help for his crack problem in prison). Moreover, Kim would be obligated by law to make full restitution, whether before or after sentencing. *See* U.S.S.G. § 5E1.1. The Court concludes that the three-level offense level adjustment adequately accounts for Kim's acceptance of responsibility, and the Court declines to order a separate downward departure on this same basis.

■ Kim next argues that the Court should grant her a downward departure because of her extraordinary post-offense rehabilitation efforts. Specifically, Kim has undergone extensive therapy to address the psychological condition allegedly at the root of her crimes. Those efforts have shown progress, Kim urges, as evidenced by the fact that she is now entrusted with certain financial responsibilities at her brother-in-law's medical practice.

■ Extraordinary post-offense rehabilitation is a factor not specifically mentioned in the guidelines, and therefore departure is warranted only if, "after considering the structure and theory of

both relevant individual guidelines and the Guidelines taken as a whole," the Court concludes that the factor takes the case out of the "heartland" of typical cases. *Koon*, 518 U.S. at 96, 116 S.Ct. 2035 (internal quotation marks and citation omitted).[3] Departures based upon unmentioned factors are "highly infrequent." U.S.S.G. Ch. 1. Pt. A, at 7; *see also United States v. Bryson*, 163 F.3d 742, 747 (2d Cir.1998) ("[A] sentencing judge may exercise discretion and depart from the applicable guideline range in light of a defendant's efforts toward rehabilitation, provided those efforts are extraordinary.").

The Court finds that Kim's efforts at combating her psychological problems do not warrant departure. First, for many of the same reasons expressed in connection with Kim's argument for a departure based on diminished capacity, the Court does not find compelling the causal link between her rehabilitation and the specific offenses to which she has pled guilty. Kim pled guilty to bank fraud – a crime of elaborate deceit – and her current psychotherapy regimen is more directed at addressing Kim's motives for that deceit (*i.e.*, her troubled family relations) than the deceit itself. In other words, Kim has not demonstrated rehabilitation in a manner relevant to her crimes. The Court would be more amenable to granting such a departure were the rehabilitation efforts more directly related to the charged offense. *See, e.g., United States v. Rosado*, 254 F.Supp.2d 316, 321 (S.D.N.Y.2003) (granting a two-level downward departure on the ground of extraordinary post-offense rehabilitation where a drug offender obtained his high school equivalency diploma, gave up drugs, found employment, began to support his children, and severed his ties with his drug-dealing friends). Second, based on the relevant caselaw, and the Court's own consideration of comparable cases, the Court regards Kim's efforts in this respect commendable, but not so extraordinary as to reach the exacting standards justifying a downward departure.

■ Finally, Kim urges the Court to award a downward departure based upon the combination of all the factors just discussed. Even where no single basis for departure would be sufficient, the 2001 Guidelines recognize the possibility of an "extraordinary case" in which a combination of factors takes the case outside the heartland of typical cases and justifies departure. *See* U.S.S.G. § 5K2.0 cmt. The Court is not convinced that this is among the "extremely rare" instances in which such a departure is warranted. *Id.* The case for departure on each of the asserted grounds is relatively weak, and is not much more compelling in the aggregate.

## III. *ORDER*

For the reasons stated, it is hereby

**ORDERED** that the motion of defendant Grace Kim ("Kim") for a downward departure from the otherwise applicable sentencing guidelines range is denied

**SO ORDERED.**

---

**3.** The guidelines take into account post-*sentence* rehabilitation, *see* U.S.S.G. § 5K2.19, and also take into account the somewhat related issue of acceptance of responsibility, *see* U.S.S.G. § 3E1.1, but they do not specifically take into account post-offense, pre-sentence rehabilitation. *See United States v. Maier*, 975 F.2d 944, 948 (2d Cir.1992).