UNITED STATES of America,
Appellee,

v.

Juan Antonio REINOSO, Defendant–
Appellant.

No. 02–1630.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 7, 2003.

Decided: Nov. 17, 2003.

Valerie Amsterdam, Amsterdam & Branden, New York, NY, for defendant-appellant.

Michael M. Purpura, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney for the Southern District of New York, on the brief; Gary Stein, Assistant United States Attorney, of counsel), New York, NY, for appellee.

Before: CARDAMONE, SOTOMAYOR, and KATZMANN, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Juan Antonio Reinoso ("Reinoso" or "defendant") appeals from a judgment entered on October 15, 2002, in the United States District Court for the Southern District of New York (Schwartz, J.), following a guilty plea. Reinoso, a citizen of the Dominican Republic, pled guilty to illegally reentering the United States after having been deported subsequent to his 1995 conviction for the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The district court sentenced Reinoso to a term of 77 months' imprisonment, to be followed by a two-year term of supervised release. Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2L1.2,[1] which governs the offense level for illegal reentry, the district court found that Reinoso's conviction for second-degree armed robbery constituted a conviction for a "crime of violence" that mandated a 16–level enhancement to the base offense level, even though the conviction had later been vacated by a youthful offender adjudication. The court also denied a downward departure based on diminished capacity, finding that Reinoso's mental and emotional problems, caused by severe childhood abuse, had not contributed to his commission of the offense. We hold that the district court was correct to

---

1. Unless otherwise noted, all references to the Sentencing Guidelines are to the 2001 version applied by the district court.

apply the 16–level enhancement, and that it did not misapprehend its authority to grant a downward departure based on extreme childhood abuse. We also reject defendant's argument, raised for the first time in his reply brief, that the district court should have applied the version of the Guidelines that was in effect at the time of the offense.

## BACKGROUND

Reinoso initially moved to the United States from the Dominican Republic in 1984, at the age of 16. He then accumulated a substantial criminal record, beginning in 1985, when he was tried and convicted as an adult in the New York County Supreme Court for second-degree armed robbery. Because he was only 17 at the time of his conviction, he was later adjudicated a "youthful offender" under New York law, and his conviction was vacated. Reinoso proceeded to commit multiple narcotics and firearms offenses and attempted burglary of a motor vehicle, and was deported to the Dominican Republic in November 1998. He returned to the United States illegally in 1999 or 2000, and was arrested on April 19, 2000. Charged with illegally reentering the United States subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), Reinoso pled guilty in August 2001.

At Reinoso's sentencing hearing in October 2002, the government argued that, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), Reinoso should receive a 16–level enhancement to the base offense level provided for illegal reentry in U.S.S.G. § 2L1.2(a), because he had been convicted of second-degree armed robbery, a felony crime of violence, prior to his illegal reentry. Reinoso did not contest that the armed robbery conviction would constitute a crime of violence within the meaning of § 2L1.2(b)(1)(A)(ii), but contended that be-

cause the conviction had later been vacated by the New York Supreme Court's finding that he was a youthful offender, the court could not consider it in determining his offense level. He further argued that he was entitled to a downward departure for diminished capacity because, as a result of the severe abuse that he suffered as a child, he was "psychologically constrained to return to the United States." The district court found that Reinoso's armed robbery conviction warranted the 16–level enhancement, resulting in a total offense level of 24, and denied the downward departure on the ground that there was no causal connection between Reinoso's mental state and his offense. The court therefore imposed a sentence of 77 months' imprisonment.

## DISCUSSION

On appeal, Reinoso raises a number of challenges to his sentence. He first argues that the district court should not have taken into account his armed robbery conviction in increasing his offense level by 16 points pursuant to U.S.S.G. § 2L1.2, because that conviction was later vacated by a youthful offender adjudication. He then contends that the district court committed plain error and violated the *ex post facto* clause of the Constitution by sentencing him pursuant to the 2001 version of the Guidelines, in effect at the time of his October 2002 sentencing, rather than the 1998 version, which was in effect when he committed the offense around April 2000. Finally, Reinoso claims that the court misapprehended its authority to grant him a downward departure based on extraordinary childhood abuse. All of these contentions are without merit.

## I. Reinoso's Offense Level Under Section 2L1.2

■ Reinoso argues that, because his armed robbery conviction had later been

vacated by his youthful offender adjudication, the district court erred in applying a 16–level enhancement to his base offense level pursuant to U.S.S.G. § 2L1.2. Section 2L1.2(b)(1)(A)(ii) provides that "[i]f the defendant previously was deported ... after—(A) a conviction for a felony that is ... (ii) a crime of violence," the base offense level of 8 should be increased by 16 levels. Because armed robbery is included in the definition of a "crime of violence," U.S.S.G. § 2L1.2, cmt. n. 1(B)(ii)(II), the district court found that Reinoso's armed robbery conviction mandated the 16–level enhancement.

Reinoso contends, however, that his youthful offender adjudication precludes a finding that his armed robbery offense resulted in a "conviction" within the meaning of § 2L1.2(b)(1)(A). New York law provides that an "eligible youth" between the ages of 16 and 19 who is tried as an adult may, subsequent to his or her conviction, be adjudicated a youthful offender, resulting in the vacating of the judgment of conviction. N.Y.Crim. Proc. L. § 720.20(1)-(3) (McKinney's 2000). Because a youthful offender adjudication is "not a judgment of conviction for a crime," *id.* § 720.35(1), Reinoso argues that it may not be considered in calculating his offense level pursuant to U.S.S.G. § 2L1.2.

This argument is foreclosed by our holding in *United States v. Driskell*, 277 F.3d 150 (2d Cir.2002), that a youthful offender adjudication remains a conviction in substance, regardless of its characterization under New York law. In considering whether a conviction later vacated by a youthful offender adjudication could be used to calculate a defendant's criminal history pursuant to U.S.S.G. § 4A1.1 and 4A1.2(d), we examined New York's treatment of youthful and juvenile offenders, and concluded that a youthful offender adjudication is intended not to absolve youthful offenders of criminal responsibility, but rather, to punish them for their crimes while aiding in their post-conviction rehabilitation. *Id.* at 155; *see also United States v. Matthews*, 205 F.3d 544, 548–49 (2d Cir.2000) (holding that an adjudication under New York's youthful offender statute does not operate as an "expungement" of the defendant's conviction, and the conviction may be considered in calculating criminal history). Because an eligible youth is not deemed a youthful offender until *after* he has been convicted as an adult, and "the court has, in its discretion, determined that the interest of justice would be served by relieving the eligible youth from the onus of a criminal record," we concluded that a youthful offender adjudication does not alter the substance of the defendant's adult conviction. *Driskell*, 277 F.3d at 155 (internal quotation marks omitted).

*Driskell*'s reasoning applies here. Section 2L1.2 requires only that the defendant have a "conviction" for a crime of violence in order to warrant the 16–level enhancement, as Reinoso does. His subsequent youthful offender adjudication did not expunge his conviction, or otherwise absolve him of criminal responsibility for the armed robbery. The district court was therefore correct in using the conviction to calculate Reinoso's offense level.

Reinoso argues, however, that *Driskell* should not apply because New York's characterization of his conviction should control the analysis under § 2L1.2. He relies on *United States v. Davis*, 2003 WL 252143, at *1–*2 (W.D.N.Y. Jan.29, 2003), in which the district court refused to apply *Driskell*'s emphasis on the substance of a youthful offender adjudication in calculating the defendant's offense level under § 2K2.1, the Guidelines provision that applies to possession of a firearm after a felony conviction. Reinoso's reliance on

*Davis* is unavailing, however. Section 2K2.1, the Guidelines provision at issue in *Davis,* specifically defines an "adult conviction" as one that is "classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." U.S.S.G. 2K2.1 cmt. n. 5. Section 2L1.2, in contrast, does not define the term "conviction" or provide any limitations on the types of adjudications that could constitute convictions, nor does it limit the definition of "conviction" by reference to its state law characterization as an "adult conviction." *See* U.S.S.G. § 2L1.2 cmt. n. 1(B)(ii). Similarly, the Guidelines provision at issue in *Driskell,* § 4A1.1, also did not incorporate the state law characterization of the conviction into its definition of "conviction." Thus, a comparison of § 2L1.2 and § 4A1.1 with § 2K2.1 establishes that, when the drafters of Guidelines intend to render the sentencing court's analysis dependent on the state's treatment of the conviction, they explicitly reference the state law characterization in the text of the provision. *See, e.g., id.* § 2K1.3, cmt. n. 2 (defining "felony conviction" as "a prior adult federal or state conviction . . . classified as an adult conviction under the laws of the jurisdiction"); *id.* § 4B1.2, cmt. n. 1 (same). Section 2L1.2's failure to mandate that the sentencing court accord a defendant's conviction the status that New York law ascribes to it indicates Congress's intent not to so limit the definition of "conviction."

Reinoso next argues that *Driskell* should not control his sentencing because the Guidelines section at issue in *Driskell* determined the defendant's criminal history category, rather than his base offense level. There is no principled reason to distinguish between convictions that are considered for the purpose of calculating a defendant's criminal history category, and those used to calculate the base offense level. We suggested as much in *Driskell,*

as we cited with approval two cases from other circuits that treated youthful offender adjudications as convictions for the purpose of determining offense level enhancements based on the defendants' status as career offenders. *See Driskell,* 277 F.3d at 157 (citing *United States v. Pinion,* 4 F.3d 941 (11th Cir.1993), and *United States v. Carrillo,* 991 F.2d 590 (9th Cir. 1993)). Moreover, the ultimate purpose of both the offense level enhancement at issue here and the criminal history calculation at issue in *Driskell* is to take into account the substance of a defendant's prior criminal conduct, because in both cases the drafters of the Guidelines have determined that it is relevant to the severity of the sentence to be imposed. Just as the criminal history calculation reflects that a "defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment" for the same offense, U.S.S.G. pt. 4 intro. cmt., the offense of illegal reentry is rendered more serious when committed by a defendant with a history of violent crime, and therefore merits a more severe sentence, *see id.* § 2L1.2(b). Accordingly, there is no basis for distinguishing between the criminal history calculation and the base offense level calculation in applying *Driskell* 's conception of youthful offender status.

Reinoso also contends that, in the alternative, § 2L1.2 is ambiguous as to whether his youthful offender adjudication should be treated as a conviction for a crime of violence, because "the Sentencing Commission . . . did not choose to specifically articulate that [youthful offender] adjudications . . . constitute predicate felonies for purposes of base offense level enhancements," and therefore the rule of lenity should apply. Although "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defen-

dant," *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), "in order for the rule of lenity to apply to a criminal law—or in this case, to a Guideline—the provision of law at issue must be ambiguous." *United States v. Simpson,* 319 F.3d 81, 87 (2d Cir.2002). The fact that § 2L1.2 does not explicitly provide for the consideration of youthful offender adjudications does not render the provision ambiguous. As discussed above, the plain language of § 2L1.2, considered in tandem with other provisions, as well as the controlling case law, clearly establishes that the provision does not limit the term "conviction" to those judgments that would be considered convictions under state law.

## II.   The District Court's Use of the 2001 Version of the Guidelines

■ Reinoso argues for the first time in his reply brief that the district court, in calculating his sentence, should not have used the 2001 version of the Guidelines, in effect at the time of his sentencing, but rather, should have used the 1998 version in effect at the time of his offense. Reinoso contends that the 2001 Guidelines had been amended to mandate higher penalties for the offense of illegal reentry than were in place under the 1998 version in effect in 2000, when he committed the offense. We will consider this argument because it could otherwise be raised in a collateral attack, and because it is entirely without merit. *See United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir.1993) (considering argument that was not properly presented to the court on appeal in order to obviate the possibility of a collateral attack on the conviction). Section 1B1.11(a) of the Guidelines provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," but that "[i]f the court determines that the use of the Guidelines Manual in effect on the date that the defendant is sentenced would

violate the *ex post facto* clause of the ... Constitution," the court must apply the version of the Guidelines in effect when the offense was committed, *id.* § 1B1.11(b)(1).

Because Reinoso was sentenced in October 2002, the district court applied the 2001 version of § 2L1.2, which provides for a base offense level of 8, and the 16–level enhancement that Reinoso received because his armed robbery conviction counted as a previous conviction for a crime of violence. *Id.* § 2L1.2(b)(1)(A) (2001). The 2001 version of § 2L1.2 reflected recent amendments, however, that altered the way in which the offense level increases in accordance with prior convictions. The 1998 version of § 2L1.2, which was in effect at the time that Reinoso illegally reentered the country, provides that the base offense level is 8, and that the offense level should be increased by the greater of 16 levels for a prior conviction of an aggravated felony, or 4 levels for a prior conviction of any other felony. *Id.* § 2L1.2(b)(1) (1998). Reinoso contends that the armed robbery conviction would have mandated only the 4–level enhancement, and therefore the 2001 Guidelines exposed him to a higher potential sentence than the version in effect when he committed the offense, requiring the district court to apply the 1998 Guidelines to calculate his sentence.

Because Reinoso failed to object to the district court's use of the 2001 Guidelines at his sentencing, we review only for plain error, *United States v. Sofsky,* 287 F.3d 122, 125 (2d Cir.2002), and find Reinoso's argument to be without merit. The foundation of his contention is that he would have received a lesser sentence under the 1998 Guidelines because his armed robbery conviction would have resulted in an offense level enhancement of only 4 levels, resulting in a total offense level of 12, rather than the level of 24 reached under

the 2001 Guidelines. Reinoso ignores the fact that he has multiple convictions, however, and if any one of them would qualify as an "aggravated felony" conviction under § 2L1.2(b)(1)(A) (1998), he would have received a 16–level enhancement even under the 1998 Guidelines. Application note 1 defines an "aggravated felony" as one of the offenses enumerated by 8 U.S.C. § 1101(a)(43), which includes a "theft offense . . . or burglary offense for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(G). In 1989, Reinoso was convicted in New Jersey of attempted burglary of a motor vehicle, for which he received a sentence of four years' imprisonment. Because this aggravated felony conviction would have warranted a 16–level enhancement, which in turn would have placed Reinoso's sentence in the range of 77–96 months, *see* U.S.S.G. Ch. 5 pt. A (1998), Reinoso would have faced the same sentencing range under the 1998 Guidelines as he did under the 2001 Guidelines. The district court's use of the 2001 Guidelines therefore does not implicate the *ex post facto* clause or § 1B1.11, and the court correctly applied the version of the Guidelines in effect at the time of sentencing.

### III. Downward Departure for Extreme Childhood Abuse

■ Finally, we consider Reinoso's claim that the district court misapprehended its authority to grant him a downward departure based on "extreme childhood abuse." *United States v. Rivera*, 192 F.3d 81, 85 (2d Cir.1999). "[A] district court's decision not to depart from the applicable Guidelines range normally is not appealable," *United States v. Garcia*, 166 F.3d 519, 521 (2d Cir.1999), except in the rare cases in which the district court has imposed an illegal sentence or mistakenly believed that it lacked the authority to depart, *United States v. Lainez–Leiva*, 129

F.3d 89, 93 (2d Cir.1997). Reinoso's argument is essentially that the district court misunderstood its authority to depart because it failed to realize that Reinoso's childhood abuse was so severe that it automatically warranted a departure, regardless of whether it contributed to his illegal reentry into the United States. This contention is without merit.

■ At the sentencing proceeding, Reinoso requested a departure based on diminished capacity, but not on childhood abuse, and the district court found that Reinoso's reduced mental capacity did not contribute to the commission of the offense, and therefore no diminished capacity departure was warranted. This determination precludes a childhood abuse departure as well, because a finding "that extreme childhood abuse caused mental and emotional conditions that *contributed to* the defendant's commission of the offense" is a factual prerequisite for the departure. *Rivera*, 192 F.3d at 85 (emphasis added). Although the court did not explicitly consider the childhood abuse departure ground (presumably because defendant never argued it), it had already found, in essence, that "the facts of the case at hand [did] not provide any basis for lawful departure." *United States v. Brown*, 98 F.3d 690, 693 (2d Cir.1996). Given the court's clear factual finding with respect to the diminished capacity ground, the judge's silence on the childhood abuse departure ground is best viewed as reflecting the understanding that a departure on that basis had already been precluded. It certainly does not provide "clear evidence of a substantial risk" that the judge misapprehended his authority to depart. *Id.* at 694; *United States v. Lawal*, 17 F.3d 560, 563 (2d Cir.1994) ("[A] district court's silence concerning its refusal to depart downward does not support an inference that

the district court misapprehended its scope of authority.").

To the extent that Reinoso is arguing that the abuse he suffered was so severe that it automatically warrants a downward departure, regardless of the existence of a causal connection between the abuse and the offense conduct, his contention is precluded by our case law. *Rivera* explicitly limits the situations in which a departure based on abuse is warranted to those in which the abuse creates to a mental condition that in turn leads to or causes the criminal conduct. *Rivera*, 192 F.3d at 85.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.