**UNITED STATES of America,**
**Appellee,**

v.

**Brian JONES, Defendant–Appellant.**

**Docket No. 04–2506–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 4, 2005.

Decided: July 19, 2005.

---

George F. Hildebrandt, Syracuse, NY, for Defendant–Appellant.

Elizabeth S. Riker, Assistant United States Attorney for the Northern District of New York, (Glenn T. Suddaby, United States Attorney, John G. Duncan, Assistant United States Attorney, on the brief), Syracuse, NY, for Appellee.

Before: NEWMAN and POOLER, Circuit Judges, and BRIEANT, District Judge.*

---

* The Honorable Charles L. Brieant, United States District Judge for the Southern District of New York, sitting by designation.

POOLER, Circuit Judge.

Defendant-appellant Brian Jones appeals from a judgment, entered on May 7, 2004, in the United States District Court for the Northern District of New York (Howard G. Munson, *Judge*), convicting and sentencing Jones principally to 60 months imprisonment after he pleaded guilty to possession with intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) ("Section 841"). Jones argues that the district court improperly counted his two New York State youthful offender adjudications to determine that he was a Career Offender under the United States Sentencing Guidelines ("Guidelines"), *see* U.S.S.G. § 4B1.1, and that *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), requires that his case be remanded to the district court.

We hold that the district court did not err in predicating Jones's Career Offender status on his two youthful offender adjudications. Accordingly, we affirm the district court's legal interpretation of U.S.S.G. § 4B1.1 and remand for consideration of whether to resentence pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005).

## BACKGROUND

This is a direct appeal of a district court's sentencing determination prior to the Supreme Court's decision in *Booker* and this Court's decision in *Crosby*.

On September 26, 2003, Jones pleaded guilty to possession with intent to distribute less than five grams of crack in violation of Section 841. Subsequent to the plea, the government and Jones agreed that the quantity of crack at issue was one-tenth of one gram. At sentencing, operating under the then-mandatory Guidelines regime, Judge Munson determined that Jones, who was over eighteen at the time he committed the instant controlled substance offense, was a Career Offender pursuant to U.S.S.G. § 4B1.1 ("Career Offender guideline"). Relevant to this appeal, the Career Offender finding was based on Judge Munson's determination that Jones's two prior youthful offender adjudications in a New York State court constituted "felony *convictions* of either a crime of violence or a controlled substance offense." *See* U.S.S.G. § 4B1.1(a) (emphasis added).

The Career Offender determination did not affect Jones's criminal history category of VI[1] but did have a significant effect on Jones's base offense level and Guidelines range. Without a Career Offender finding, Jones's base offense level would have been 12, *see* U.S.S.G. § 2D1.1(c)(14). Applying the base offense level of 12 to Jones's criminal history category of VI, Jones's applicable Guidelines range would have been 24 to 30 months imprisonment. Because of the Career Offender finding, however, the district court applied a base offense level of 32. Jones's offense level increased from 12 to 32 because the Career Offender guideline required the district court to change Jones's base offense level in accordance with a table, *see* U.S.S.G. § 4B1.1(b), which sets a defendant's base offense level at the maximum sentence associated with the offense level of conviction.[2] Applying Jones's base of-

---

1. With Career Offender status, Jones had a criminal history category of VI. *See* U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."). Without Career Offender status, Jones still would have had 13 criminal history points, which also would have yielded a criminal history category of VI.

2. Because the statutory maximum term of imprisonment is 20 years for Jones's Section 841 violation, Jones's base offense level rose

fense-which was reduced by three levels for acceptance of responsibility, U.S.S.G. § 3E1.1(b)-to his criminal history category of VI yielded a Guidelines range of 151 to 188 months. *See* U.S.S.G. Sentencing Table, Ch. 5, pt. A.

Jones moved for downward departure based on extreme childhood abuse. The government, acknowledging Jones's "extremely abusive childhood," agreed that the district court should downwardly depart on this basis, and recommended a sentence of 60 months imprisonment. During the sentencing hearing, Judge Munson stated that he was "quite appalled" by Jones's "horrendous upbringing." Granting Jones's motion for a downward departure, the district court ruled that "extreme childhood abuse caused mental and emotional conditions that contributed to [the] commission of this offense." *See* U.S.S.G. §§ 5H1.3, 5K2.0; *see also United States v. Rivera,* 192 F.3d 81, 85 (2d Cir.1999) (stating that downward departure for extreme childhood abuse is available in "extraordinary circumstances.").

Although Jones had agreed to withdraw his other downward departure motions, the district court *sua sponte* granted Jones a downward departure under U.S.S.G. § 4A1.3(b)(1). Judge Munson, noting that Jones's Guidelines range would have been 24 to 30 months if he was not considered a Career Offender, determined that the criminal history category of VI over-represented the seriousness of Jones's criminal history and likelihood of recidivism. *See*

U.S.S.G. § 4A1.3(b)(1). Based on these determinations, the district court granted a downward departure and sentenced Jones principally to 60 months imprisonment.

On appeal, Jones argues (1) that the district court improperly considered his two youthful offender adjudications as "convictions" when determining that he was a Career Offender under the Guidelines and (2) that *Booker* and *Crosby* require that his case be remanded for resentencing.[3]

## DISCUSSION

### I. Implications of Booker and Crosby

■ Although judicial factfinding that Jones had prior convictions and sentences imposed is not Sixth Amendment error, *see Booker,* 125 S.Ct. at 756,[4] the *Booker* Court clarified that a sentencing judge commits procedural error by mandatorily applying the Guidelines. *See Crosby,* 397 F.3d at 114–15. In *Crosby,* we ruled that, in a direct appeal involving a pre-*Booker* sentence, a remand for determination of whether to resentence is generally necessary in order to undertake the proper application of the plain error doctrine.[5] *Id.* at 118.

■ At oral argument, Jones's counsel informed this panel that his client sought a remand pursuant to *Crosby.* Because we find no reason to deprive Jones of a remand, we will remand for consideration of whether to resentence in light of

to 32 in accordance with the chart. *See* 21 U.S.C. § 841(b)(1)(C); U.S.S.G. § 4B1.1(b)(C).

**3.** This Court granted Jones leave to file a supplemental brief to address the effect of *Booker.* We received this briefing prior to oral argument.

**4.** *See also United States v. Woodard,* 408 F.3d 396, 398–99 (7th Cir.2005); *United States v. Bradley,* 400 F.3d 459, 462–63 (6th Cir.2005).

**5.** Because we do not find any indication in the record that Jones preserved this claim, we find that plain error, rather than harmless error, is applicable in this case. *Crosby,* 397 F.3d at 119.

*Crosby.* The plain error test will be satisfied if the district court determines that a "nontrivially different sentence would have been imposed." *Id.* at 118. We do not express an opinion with respect to this determination. *See id.* at 120. Regardless of Judge Munson's determination on remand, however, he is required to "consider" the Guidelines along with the factors set out in Section 3553(a). *Id.* at 111. Accordingly, we write this opinion solely to assist the district court by declaring the proper legal interpretation of the Career Offender guideline. *See United States v. Fagans,* 406 F.3d 138, 141 (2d Cir.2005) ("[I]f the Guideline calculation issue is not difficult, it might often be preferable to adjudicate the calculation issue promptly so that subsequent sentencing proceedings will occur in light of a correct calculation."); *see also United States v. Rubenstein,* 403 F.3d 93, 98–99 (2d Cir.2005). Following *Booker* and *Crosby,* we continue to review a district court's legal interpretations of the Guidelines de novo. *See Rubenstein,* 403 F.3d at 99.

## II. New York Youthful Offender Adjudications and the Career Offender Guideline

Under New York law, a sixteen, seventeen, or eighteen year-old youth, who meets certain conditions and is convicted as an adult, may be adjudicated a "youthful offender," thereby vacating and replacing his conviction with a youthful offender finding. N.Y.Crim. Proc. Law §§ 720.10(1)-(2), 720.20(1)-(3). A "youthful offender adjudication" comprises a "youthful offender finding" and the subsequent imposition of a "youthful offender sentence." *Id.* § 720.10(6). Youthful offender status carries with it certain benefits, such as privacy protections. *See id.*

§ 710.35(2); *United States v. Driskell,* 277 F.3d 150, 155–56 (2d Cir.2002) (describing benefits and stating that youthful offender statute addresses defendant's "potential for rehabilitation"). When a youthful offender adjudication is based on an underlying felony conviction, the defendant is committed to the custody of New York's Department of Correctional Services along with adult felony offenders. *See United States v. Cuello,* 357 F.3d 162, 166 (2d Cir.2004) (citing N.Y. Penal Law §§ 70.20, 60.02(2), 70.00(2)(e)).

■ Here, the state court of conviction deemed Jones's two 1993 felony convictions "youthful offender adjudications." Jones received and served sentences of over one year in adult prison for each of these adjudications. The relevant inquiry for this Court is whether or not these New York State youthful offender adjudications constitute "prior felony convictions" for the purposes of the Career Offender guideline.

A defendant will be considered a "Career Offender" under the Guidelines if the following three prongs are satisfied:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Jones contends that the third prong of the analysis is not satisfied because his two prior youthful offender adjudications do not constitute prior felony convictions for purposes of the Career Offender guideline.[6] A "prior felony

---

**6.** The first two prongs are undisputably satisfied. Moreover, Jones challenges only the

determination that his youthful offender adjudications were felony *convictions* and does

conviction" is defined as "a prior *adult* federal or state conviction for an offense punishable by ... imprisonment for a term exceeding one year ...." U.S.S.G. § 4B1.2, comment. (n.1) (emphasis added). A conviction that occurs before the age of eighteen will be deemed an adult conviction "if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." *Id.*[7]

This Court has never considered whether New York State youthful offender adjudications are "classified as" adult convictions under New York law for the purposes of the Career Offender guideline. Nonetheless, in a series of cases involving the scope of conviction in other provisions of the Guidelines, we have held that a federal sentencing court can consider youthful offender adjudications. *See Cuello,* 357 F.3d at 164 (allowing the use of youthful offender adjudication to calculate base offense level under U.S.S.G. § 2K2.1); *United States v. Reinoso,* 350 F.3d 51, 52–53 (2d Cir.2003) (to determine base offense level under U.S.S.G. § 2L1.2); *Driskell,* 277 F.3d at 151 (to calculate criminal history category under U.S.S.G. § 4A1.1); *United States v. Matthews,* 205 F.3d 544, 545 (2d Cir.2000) (same). We note that the language specifically at issue in this case, "classified as an adult conviction under [New York law]," was only considered in *Cuello.* 357 F.3d at 168 (quoting U.S.S.G. § 2K2.1, comment. (n.5)[8] (internal quotation marks omitted)). The definitions of "conviction" in the guidelines at issue in *Matthews,*

*Driskell,* and *Reinoso* did not explicitly refer to New York law in any way.

Jones contends that the *Matthews* line of cases supports his argument in two ways and also advances an argument under the Full Faith and Credit Act, 28 U.S.C. § 1738. All of these arguments fail.

### A. Jones's first Matthews argument

Jones argues that, according to the *Matthews* line of cases, application of youthful offender adjudications to federal sentencing determinations is proper only when New York law permits consideration of the adjudications in an analogous context. Jones reasons as follows. New York's predicate felony scheme, which mandates minimum periods of imprisonment based on a defendant's past felony convictions, is analogous to the Career Offender guideline. *Compare* N.Y. Penal Law §§ 70.04, 70.06–08, 70.10 *with* U.S.S.G. § 4B1.1. Consequently, the fact that New York courts could not use Jones's prior youthful offender adjudications for the purposes of New York's predicate felony regime indicates that the adjudications were not "classified as" adult convictions under New York law as is required by the Career Offender guideline. Assuming arguendo that Jones has correctly identified the analogous context under New York law, this argument is without merit. Our reasoning in the *Matthews* line of cases, while respecting the overall nature and purpose of New York's youthful offender statute,

not argue that the adjudications did not involve either a crime of violence or a controlled substance offense.

7. Although it is found in an application note, this definition is binding on this Court as it defines a particular term and is not inconsistent with the text of the Guidelines, the Constitution, or federal law. *See United States v. Sash,* 396 F.3d 515, 522–23 (2d Cir.2005).

8. An amendment to the Guidelines effective November 1, 2004, *see* U.S.S.G.App. C. amend. 669, renumbered the application notes to 5K2.1. All cites to the Guidelines herein refer to the 2002 edition of the Guidelines used by the district court below.

does not rely on a specific finding of analogous state law. Since Jones's "analogous state law" argument relies on the reasoning behind our holdings in *Matthews* and its progeny, we briefly discuss relevant aspects of those cases.

The defendant in *Matthews* argued that a New York State youthful offender adjudication is an "expunged conviction" and therefore a federal sentencing court was expressly forbidden from considering it as a conviction in the calculation of his criminal history score under U.S.S.G. § 4A1.1. *See Matthews*, 205 F.3d at 545–46; *see also* U.S.S.G. § 4A1.2(j) (declaring that, for Section 4A1.1 calculations, "[s]entences for expunged convictions are not counted"). To determine whether New York expunged the conviction compelled the Court "to look to the language and design of the state statute, as well as its purpose." *Matthews*, 205 F.3d at 546. The language of New York's youthful offender statute is silent as to whether a youthful offender adjudication constitutes an expunged conviction. *Id.* at 547. Turning to the design and purpose of the statute, the Court found that, unlike Vermont's juvenile statute, which calls for subsequent deletion of all vestiges of the proceedings, New York's youthful offender statute allows use of youthful offender adjudications "for subsequent purposes." *Id.* at 546–47 (citing *United States v. Beaulieau*, 959 F.2d 375, 380–81 (2d Cir.1992)). Accordingly, the *Matthews* Court held that New York youthful offender adjudications do not constitute "expunged convictions" under U.S.S.G. § 4A1.2(j). *Matthews*, 205 F.3d at 548.

The *Driskell* defendant, also challenging his criminal history score under U.S.S.G. § 4A1.1, claimed that his prior sentence of imprisonment did not "result from" an adult conviction as is required by U.S.S.G. § 4A1.2(d)(1) because his New York State conviction was vacated and replaced by a youthful offender adjudication *before* sentencing. *See Driskell*, 277 F.3d at 153–54. The Court ruled that district courts should look to "the substance of the prior conviction" rather than "New York's label." *Id.* at 157. Thus, a youthful offender adjudication can be considered a conviction within the meaning of the criminal history guideline when the defendant "was tried in an adult court, convicted as an adult, and received and served a sentence exceeding one year and one month in an adult prison." *Id.* at 154. In *Reinoso*, a case involving application of a youthful offender adjudication to defendant's base offense level under U.S.S.G. § 2L1.2, defendant argued that because his youthful offender adjudication was "not a judgment of conviction for a crime" under New York law, N.Y.Crim. Proc. Law § 720.35(1), it could not be treated as a "conviction" for purposes of Section 2L1.2. *See Reinoso*, 350 F.3d at 54. We held that *Driskell* foreclosed defendant's argument, affirming "that a youthful offender adjudication remains a conviction in substance, regardless of its characterization under New York law." *Id.*

While rejecting New York's labels, *Matthews*, *Driskell*, and *Reinoso* did consider the treatment of youthful offender adjudications under New York law to some extent. Jones contends that this lends support to his "analogous state law" theory: Acknowledging that youthful offender adjudications cannot be used under New York's predicate felony statute, we found it relevant that New York's youthful offender statute permits the adjudications to "be used in various other ways both inside and outside the State of New York," *Matthews*, 205 F.3d at 548, and that the "statutory scheme does not operate to relieve the defendant from all of the consequences of his criminal conduct," *Driskell*, 277 F.3d at 155. *See also Reinoso*, 350 F.3d at 54.

According to the reasoning behind Jones's argument, our statements suggest that the Career Offender context is different from the previous line of cases because, under New York law, the predicate felony scheme is one situation where defendant *is relieved from* the consequences of his criminal conduct.

Our reference to the fact that New York's youthful offender statute does not eliminate all culpability, however, was not intended to require a sentencing court to find an analogous New York context where youthful offender adjudications are used for enhanced sentencing. Instead, our cases referenced the broad purpose of New York's youthful offender statutory scheme and established an important baseline; if a state eliminates all trace of a prior youthful offender adjudication, a federal court cannot consider it a prior "conviction" for sentencing purposes. *See Driskell,* 277 F.3d at 155–56; *Matthews,* 205 F.3d at 546; *see also Beaulieau,* 959 F.2d at 380–81. As further indication that we did not intend to differentiate the Career Offender guideline context, in *Driskell* and *Reinoso* we cited with approval cases from other circuits that applied youthful offender adjudications to the Career Offender guideline. *See Reinoso,* 350 F.3d at 56 (citing *Driskell,* 277 F.3d at 157).

In *Cuello,* unlike the previous cases discussed, we considered a section of the Guidelines that contained the precise language at issue in this case: a conviction that occurs before the age of eighteen will be deemed an adult conviction "if it was classified as an adult conviction under the laws of [New York]." *Compare* U.S.S.G. § 4B1.2, comment. (n.1) *with* U.S.S.G. § 2K2.1, comment. (n.5). The defendant in *Cuello,* disputing his base offense level, contended that the phrase "classified as an adult conviction" under New York law dif-

ferentiated his case from the previous *Matthews* line of cases, which involved statutory language that did not explicitly refer to New York's characterization of the conviction. *Cuello,* 357 F.3d at 168. According to the defendant in *Cuello,* New York law did not "classify" it as a conviction because the conviction had been vacated and replaced with a youthful offender adjudication. *Id.* at 165. In response, the government argued that, although the conviction is technically vacated by the youthful offender adjudication, it should be deemed a conviction for federal sentencing as "New York law itself permits consideration of youthful offender adjudications in a variety of contexts *analogous to* calculation of the defendant's base offense level under the [Guidelines]." *Id.* at 166 (emphasis added). The government's argument in *Cuello* lends support to Jones's "analogous state law" theory. Even though the *Cuello* Court did recite the government's analogous state law contention, *id.,* it did not base its holding on this reasoning.

Instead, following the pragmatic approach set out in the previous cases, the *Cuello* Court reasoned that classification as an adult conviction under the laws of New York does not mean we look to whether New York calls it a conviction, but rather, that we look to the substance of the proceedings. *See id.* at 168. Accordingly, we held that the *Cuello* defendant's youthful offender adjudication was "classified" as an adult conviction under the laws of New York because the defendant "was indisputably tried and convicted in an adult forum, and . . . served his sentence in an adult prison." *Id.* at 168–69. In conjunction with this holding, we again noted that the nature and purpose of New York's youthful offender statute indicate that a youthful offender adjudication does not eliminate defendant's culpability entirely, *see id.* at 167–68, and cited with approval a

case from another circuit applying youthful offender adjudications to the Career Offender guideline, *id.* at 168 (citing *United States v. Pinion,* 4 F.3d 941 (11th Cir. 1993)). It logically flows that our holding in *Cuello* should be applied to this case. Thus, Jones's 1993 youthful offender adjudications should be deemed "adult convictions" as Jones (1) pleaded guilty to both felony offenses in an adult forum and (2) received and served a sentence of over one year in an adult prison for each offense.

Jones's "analogous state law" argument is further undercut by our recent decision in *United States v. Sampson,* 385 F.3d 183 (2d Cir.2004). Much like the Career Offender context which, as Jones argues, mandates "minimum periods of imprisonment solely by virtue of the defendant's past felony convictions," Appellant's Br. at 13, *Sampson* involved mandatory minimum enhancements based solely on defendant's prior felony drug convictions under 21 U.S.C. § 841(b). 385 F.3d at 194. We held that the use of defendant's youthful offender adjudication for purposes of increasing defendant's statutory mandatory minimum was proper. Once again, we looked to the substantive consequence of the criminal proceeding underlying the youthful offender adjudication and found that it was a final conviction as defendant was tried and convicted in an adult court and served his sentence in an adult prison. *Id.* at 195. While we were not confronted with an "analogous state law" argument in *Sampson,* we did acknowledge that "New York courts do not use youthful offender adjudications as predicates for enhanced sentencing," yet we still found it appropriate to consider the adjudications for federal sentencing purposes. *Id.* (quoting *Matthews,* 205 F.3d at 548).

### B. Jones's second Matthews argument

Second, Jones argues that, because he pleaded guilty on the condition that he would receive a youthful offender adjudication, he was not first convicted and then later adjudicated a youthful offender pursuant to the discretion of the judge. In other words, he was never "convicted" at all. The *Matthews* line of cases, he contends, was predicated on the reasoning that a defendant is first *convicted* as an adult, and his conviction is only later vacated at sentencing as a matter of discretion. Jones relies on *Reinoso*'s statement that "an eligible youth is not deemed a youthful offender until *after* he has been convicted as an adult." 350 F.3d at 54. Jones's argument fails. Under New York law, a conviction is a prerequisite to a youthful offender adjudication. *See* N.Y.Crim. Proc. Law § 720.20(1). While it is true that Jones may only have pleaded guilty because the judge had indicated that he would adjudicate him a youthful offender, this does not change the fact that Jones was convicted before receiving youthful offender status.

Accordingly, we hold that the district court correctly interpreted the Career Offender guideline.

### C. Jones's Full Faith and Credit Act argument

■ Jones argues that the district court's use of his two prior youthful offender adjudications violated the Full Faith and Credit Act, 28 U.S.C. § 1738, because New York law would prohibit their use in an analogous situation-New York's predicate felony scheme. The Full Faith and Credit Act states in pertinent part:

> [J]udicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C.A. § 1738. Jones's argument lacks merit. We agree with the First Circuit's statement that the Full Faith and Credit Act does not "purport[ ] to prevent federal legislative authorities ... from attaching, to words in a federal statute, a meaning that differs from the meaning attached to the same word when used in a statute enacted by a state." *Molina v. INS*, 981 F.2d 14, 19 (1st Cir.1992). Moreover, the "principles of federalism and comity embodied in the full faith and credit statute," *Growe v. Emison*, 507 U.S. 25, 35, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), are not endangered when a sentencing court, not questioning the propriety of the state's determination in any way, interprets how to apply New York's youthful offender adjudications to a Guidelines analysis. *Cf. Custis v. United States*, 511 U.S. 485, 490, 493–94, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (clarifying that defendant cannot collaterally attack state court conviction during federal sentencing proceeding absent a claim that the state court lacked jurisdiction and holding that the total deprivation of right to counsel was a jurisdictional defect); *United States v. Guthrie*, 931 F.2d 564, 571 (9th Cir.1991) (concluding that doctrine of Full Faith and Credit is based on comity concerns and therefore inapplicable when determining the role of prior state convictions in a federal sentencing scheme). The federal sentencing court is neither refusing to recognize nor relitigating the validity of Jones's New York state judgment of conviction or his youthful offender sentence. Instead, it is merely noticing and acting upon the *fact* of Jones's prior conviction.

## CONCLUSION

For the above reasons, we affirm the district court's legal interpretation of the Career Offender guideline and remand for consideration of whether to resentence in accordance with *Crosby*.