24-3202 (L)
*United States v. Erskine*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of June, two thousand twenty-six.

PRESENT:

> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> JOSEPH F. BIANCO,
>  *Judges*.

_____

UNITED STATES OF AMERICA,

   *Appellee*,

   v.                                                    Nos. 24-3202 (L),
                                                                25-101 (Con)

CASWELL SENIOR, a.k.a. CASANOVA,
WALTER LUSTER, a.k.a. SHELLS, NAYA
AUSTIN, a.k.a. BABY, BRANDON

NIEVES, a.k.a. UNTOUCHABLE DOT, DEZON
WASHINGTON, a.k.a. BLAKK, ROBERT
WOODS, a.k.a. BLAKK ROB, STEPHEN
HUGH, a.k.a. CHINO, JORDAN
INGRAM, a.k.a. FLOW, SHANAY
OUTLAW, a.k.a. EASY, ISAIAH SANTOS, a.k.a.
ZAY, ROBERTA SLIGH, a.k.a. TROUBLE,
BRINAE THORNTON, a.k.a. LUXURY, JAMAL
TRENT, a.k.a. TRAP SMOKE, JARRETT
CRISLER, JR., a.k.a. JAYECEE, JR., DONAVAN
GILLARD, a.k.a. DONNIE LOVE, BRANDON
SOTO, a.k.a STACKS, DWIGHT REID, a.k.a.
DICK WOLF, AHMED WALKER, a.k.a. AMMO,

     *Defendants*,

CHRISTOPHER ERSKINE, a.k.a. BEAGLE,
DESHAWN THOMAS, a.k.a. DON,

     *Defendants-Appellants.*

_____

| | |
|---|---|
| **For Defendant-Appellant Christopher Erskine:** | BEVERLY VAN NESS, New York, NY. |
| **For Defendant-Appellant Deshawn Thomas:** | DAVID TOUGER, Peluso & Touger, LLP, New York, NY. |
| **For Appellee:** | SHIVA H. LOGARAJAH (David R. Felton, Courtney Heavey, Kathryn Wheelock, Olga I. Zverovich, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from judgments of the United States District Court for the Southern District of New York (Philip M. Halpern, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 2, 2024 and December 23, 2024 judgments of the district court are **AFFIRMED**.

Christopher Erskine appeals from a judgment of conviction following an eleven-day jury trial in which he was found guilty of racketeering conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963 (Count One); possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2 (Count Two); and narcotics conspiracy, in violation of 21 U.S.C. § 846 (Count Three), for which he was sentenced to concurrent terms of 420 months' imprisonment, to be followed by five years' supervised release. Deshawn Thomas separately appeals from a judgment following his plea of guilty to racketeering conspiracy (Count One), and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Seventeen), for which he was sentenced to an aggregate term of 248 months' imprisonment, to be followed by five years' supervised release. Both convictions relate to Defendants' membership in the Untouchable Gorilla Stone Nation

3

("Gorilla Stone"), a New York-based criminal enterprise with a history of engaging in acts of violence, narcotics trafficking, and fraud.

In this consolidated appeal, Erskine argues that the district court (i) erroneously denied his motion for a new trial after the government knowingly put on false testimony, (ii) should have declared a mistrial due to the government's improper summation, and (iii) made a series of erroneous evidentiary rulings during trial. For his part, Thomas contends that the district court erred in failing to grant his motion to withdraw his guilty plea. Each defendant also challenges the reasonableness of his sentence. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision.

## I. Erskine's Challenges to His Conviction and Sentence are Without Merit.

### A. The District Court Did Not Err in Denying Erskine's Motion for a New Trial Due to Perjured Testimony.

Erskine, the second-in-command of the Gorilla Stone gang, first challenges the district court's denial of his motion for a new trial on the ground that the government's principal witness, Walter Luster, provided willfully false testimony that the government was aware of and failed to correct. In particular, he contends that Luster falsely testified to (i) the identity of Erskine's building superintendent

4

in a photograph; (ii) the fact that Erskine had a master key that allowed him to traverse buildings underground; and (iii) the appearance of Erskine's building in a photograph.

We review a district court's denial of a motion for a new trial for "abuse of discretion, and the factual findings in support of such a decision for clear error." *United States v. Walters*, 910 F.3d 11, 29 (2d Cir. 2018). And "[r]eversal of a conviction based upon allegations of perjured testimony should be granted only with great caution and in the most extraordinary circumstances." *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000) (internal quotation marks omitted). To establish his entitlement to a new trial on the ground that the witness committed perjury, a defendant must first make a "threshold showing" that a witness "in fact willfully testified falsely and that the falsehoods were not known to [the defendant] at the time of trial." *United States v. Aquart*, 912 F.3d 1, 20 (2d Cir. 2018).

Here, Erskine cannot satisfy this "threshold showing" for any of the challenged testimony. *Id.* Beginning with Luster's misidentification of Erskine's superintendent, Erskine has failed to demonstrate that Luster "willfully testified falsely" even if Erskine "conclusively established" that Luster pointed to the wrong individual in the photo at trial. Erskine Br. at 31. That is because Luster's

5

identification was based exclusively on what Erskine had told him:  as Luster explained on the stand, Erskine had "introduced" the man identified in the photo by stating "that's my man, that's how I got the [building] key."  Erskine Trial Tr. at 1101.  Nothing in the record contradicts Luster's version of events, and even if Luster were mistaken about what Erskine had told him, merely "incorrect testimony resulting from confusion, mistake, or faulty memory" does not rise to the level of perjury.  *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) (internal quotation marks omitted).

Erskine's remaining two instances of alleged perjury fare no better.  And since Erskine raised neither of these challenges in his post-trial motion for a new trial, we review only for plain error.[1]  *See United States v. Stephenson*, 183 F.3d 110, 117–18 (2d Cir. 1999).

*First*, Erskine asserts that Luster perjured himself by testifying that Erskine traveled between two different buildings "by unlocking basement doors," when in fact "Google maps" demonstrated that the buildings "are separated by another

---

[1] "To establish plain error, a defendant must demonstrate:  (1) error, (2) that is plain, and (3) that affects substantial rights."  *United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019) (internal quotation marks omitted).  Where "all three conditions are met, we will then exercise our discretion to rectify this forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (internal quotation marks omitted).

building . . . to which [the superintendent] had no access." Erskine Br. at 32. But again, Erskine has neither shown that Luster "testified falsely" that he traveled with Erskine through "underground" passages nor that Erskine himself (rather than his superintendent) was able to access these passages. Erskine Trial Tr. at 1040. *Second*, Erskine's claim that the "street views" of his apartment "do not look anything like" the building identified as Erskine's by the superintendent at trial does not come close to the standard for perjury. Erskine Br. at 32. And even if Erskine could establish a misidentification, that would at most demonstrate that Luster was "confused" or "mistaken" – and, once again, "[s]imple inaccuracies . . . in testimony do not rise to the level of perjury." *Monteleone*, 257 F.3d at 219. Moreover, both alleged "falsehoods" were "known" to Erskine "at the time of trial," *Aquart*, 912 F.3d at 20, so the proper place to challenge them was on cross-examination. Put simply, Erskine's perjury-based arguments are without merit.

### B. The Government's Summation Was Not Improper.

Erskine next contends that he is owed a new trial because the government's summation "pressed inconsistent theories" about which defendant ordered a drive-by shooting. Erskine Br. at 34. In particular, Erskine contends that the government argued at his trial that he had "ordered" the shooting, while at

another trial it "laid" the responsibility for the event "at [a different defendant's] feet." *Id.* at 34, 36.

We will reverse a conviction on the basis of an improper summation "only if the summation was so extremely inflammatory and prejudicial that allowing the verdict to stand would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Briggs*, 457 F.2d 908, 912 (2d Cir. 1972) (Friendly, C.J.) (internal quotation marks omitted). And since Erskine raises this argument for the first time on appeal, our review is once more for plain error. *See United States v. Dugan*, 667 F.3d 84, 86 (2d Cir. 2011).

Here, there was no error – let alone plain error – because the government's theories were not inconsistent. The record is clear: the government argued *both* that Erskine encouraged the shooter to act in order to "liv[e] up to Gorilla Stone principles," *and* that another individual, the "gang disciplinarian," also played a role in bringing about the shooting. Erskine App'x at 74–75. There is nothing contradictory about that narrative, and it is hardly surprising that neither Erskine's defense counsel nor the district court objected to the government's summation during – or after – the trial.[2]

---

[2] And even if it could be argued that the government offered two inconsistent theories concerning the shooting, Erskine himself acknowledges that we "ha[ve] yet to squarely address whether the

8

**C. The District Court Did Not Abuse Its Discretion in Admitting the Challenged Evidence at Trial.**

Erskine next argues that the district court erred in permitting the government to introduce (i) evidence of "uncharged crimes," including a murder in Poughkeepsie, a slashing in Manhattan, and a shooting in Miami; (ii) graphic pictures and testimony associated with these crimes; and (iii) six music videos produced by rappers associated with Gorilla Stone. Erskine contends that this evidence had "low probative value" and was "unduly prejudicial." Erskine Br. at 43–44. We are unpersuaded.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. McPartland*, 81 F.4th 101, 114 (2d Cir. 2023). Under this standard, we will "disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *Id.* (internal quotation marks omitted). And we "accord great deference to a district court in ruling as to the relevancy and unfair prejudice of proffered evidence." *Id.* (internal quotation marks omitted).

---

Due Process Clause prohibits the government from pressing inconsistent factual theories in separate prosecutions of co-defendants," Erskine Br. at 36, which is fatal to his claim on plain-error review, since "[f]or an error to be plain, it must, at a minimum, be clear under current law," *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) (internal quotation marks omitted).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence." Fed. R. Evid. 401. But under Federal Rule of Evidence 403, a district court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

*First*, the district court did not abuse its discretion in admitting evidence of the numerous uncharged crimes in Poughkeepsie, Manhattan, and Miami. It is "well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise," *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003), because the uncharged offenses often serve as "direct evidence of the [charged] conspirac[ies]" themselves, *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). Such evidence is admissible "regardless of whether the [uncharged offenses] were performed by the defendants or by other coconspirators." *United States v. Angelilli*, 660 F.2d 23, 39 (2d Cir. 1981).

Here, the district court acted well within its discretion in concluding that there was a "self-evident nexus" between the Poughkeepsie, Manhattan, and Miami crimes and the criminal enterprise charged in the indictment. Erskine

App'x at 94. For starters, the perpetrator of the Miami Shooting sent a text message to his fellow gang members admitting that he had fired at a rival gang member while he was in Florida. *Id.* Gorilla Stone members were also intercepted on wiretaps having conversations about the murder in Poughkeepsie. *Id.* And Erskine promoted the perpetrator of the Manhattan slashing for taking down a rival gang member. Erskine Trial Tr. at 1055.

*Second*, the graphic images and testimony of such crimes were also properly admitted. As the district court noted in conducting its Rule 403 analysis, the jury was entitled to see for itself the violence perpetrated by Gorilla Stone, so that it could develop a clearer sense of the gang's "nature" and "methods." Erskine App'x at 94. We have long upheld the admission of graphic images for these reasons, as well as "to establish the human significance of [a] fact and to implicate the law's moral underpinnings." *United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) (internal quotation marks omitted). And even if the images at issue were "gruesome" and "shocking," as Erskine contends, Erskine Br. at 45, they were certainly no more "inflammatory than the charged crime[s]," *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). Thus, any potential prejudice associated with the images would not be disproportionate to the "very serious crimes" charged nor so

11

damaging as to outweigh their probative value. *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007).

*Finally*, the district court did not err in admitting the rap videos. In conducting its Rule 403 analysis, the court acknowledged that "the rap videos [may be] subject to exclusion under [Rule] 403 when they are nothing more than artistic expression," but found that these videos were "probative of the conspiracy" and of the "defendants' intent, knowledge, [and] affiliation." Erskine App'x at 96. Here, the videos – with titles referencing the gang's name, such as "Big Ape," "Motivate the Jungle," "Ape Shx," and "Heavy on the Rilla" – not only demonstrated the existence of the criminal enterprise itself but also revealed Erskine's role within it. Indeed, the recordings reflect that Erskine wanted to be included in the videos' filming. We have recognized that rap videos can be admitted "to establish the existence of, and [the defendant's] participation in, the alleged RICO enterprise." *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015). On the record before us, we cannot say that the district court's admission of the

12

videos was "arbitrary or irrational."[3]  *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

### D.  Erskine's Sentence Was Reasonable.

Erskine finally argues that his sentence of 420 months' imprisonment was procedurally and substantively unreasonable.  Again, we disagree.

A sentence is procedurally unreasonable if the district court "miscalculates the Guidelines; treats them as mandatory; does not adequately explain the sentence imposed; does not properly consider the [18 U.S.C.] § 3553(a) factors; bases its sentence on clearly erroneous facts; or deviates from the Guidelines without explanation."  *United States v. McIntosh*, 753 F.3d 388, 394 (2d Cir. 2014) (internal quotation marks omitted).  Erskine contends that the district court erred when it treated a shooting in New Rochelle as relevant conduct, thereby inflating his offense level under the Guidelines.  But the Guidelines themselves make clear that in a racketeering conspiracy, "a sentencing court may consider predicate acts as relevant conduct."  U.S.S.G. § 1B1.3.  And the predicate act relied on by the district court was clearly "relevant" because it was "within the scope" of Gorilla

---

[3] Because the district court committed no errors, we also reject Erskine's argument that the cumulative-error doctrine "requires reversal" of his convictions.  Erskine Br. at 52 (capitalization altered); *see In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 147 (2d Cir. 2008).

13

Stone's "jointly undertaken criminal activity" and "reasonably foreseeable in connection with" that activity. *Id.* § 1B1.3(a)(1). We see no abuse of discretion in the district court's finding, which was supported by a "preponderance of the evidence." *United States v. Ryan*, 806 F.3d 691, 694 (2d Cir. 2015).

Nor did the district court abuse its discretion in tacking on a two-level sentencing enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) for Erskine's role in "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." Erskine App'x at 129. In reaching that conclusion, the district court drew on witness testimony about narcotics sales Erskine had conducted in his apartment, in addition to evidence of controlled buys corroborating that testimony. Erskine offers nothing to suggest that this finding was clearly erroneous, *see Ryan*, 806 F.3d at 694, particularly in light of the "substantial deference" granted to a district judge "as to what testimony to credit" at sentencing, *United States v. Norman*, 776 F.3d 67, 78 (2d Cir. 2015).

Erskine's remaining procedural challenges are either foreclosed by our precedent or belied by the record. *First*, Erskine concedes that his challenge to the district court's finding that he is a career offender is foreclosed by this Court's precedent. *See United States v. Jones*, 415 F.3d 256, 263–64 (2d Cir. 2005). *Second*,

14

Erskine's argument that the district court "erroneously belie[ved] it could not depart from [the] career offender guideline" and failed to consider relevant downward departures, Erskine Br. at 56, is untenable given Judge Halpern's statement that he had "looked" at a possible basis for departing before and "determine[d]" that such a departure was unwarranted. Erskine App'x at 164. Our caselaw is clear that so long as the district court understood the scope of its departure authority, its decision not to exercise such authority is generally "not appealable." *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005). On this record, we cannot say that the district court procedurally erred in connection with Erskine's sentence.

Nor can it be said that Erskine's sentence was substantively unreasonable. A sentence is substantively unreasonable only if it is "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). And a defendant arguing substantive unreasonableness "bears a heavy burden because" our substantive review "of a sentence . . . is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012).

Erskine first argues that the district court afforded insufficient weight to certain "mitigating factors," including his difficult childhood. Erskine Br. at 59. But the district court clearly considered those factors, Erskine App'x at 160, and the weighing of the relevant aggravating and mitigating factors "is a matter firmly committed to [its] discretion," *Broxmeyer*, 699 F.3d at 289. Erskine also asserts that his sentence is substantively unreasonable because it is identical to the sentence received by the "undisputed leader of Gorilla Stone," Dwight Reid. Erskine Br. at 60. We have never held, however, that sentencing courts must "consider or explain sentencing disparities among codefendants." *United States v. Wynn*, 108 F.4th 73, 85 (2d Cir. 2024) (internal quotation marks omitted). Given the seriousness of Erskine's conduct, and the scope and duration of the criminal enterprise, Erskine's within-Guidelines sentence of 420 months was neither shockingly high nor otherwise unsupportable as a matter of law.

## II. Thomas's Challenges to His Conviction and Sentence Are Without Merit.

### A. The District Court Did Not Err in Denying Thomas's Request to Withdraw His Plea.

Thomas, another leader of the Gorilla Stone gang, pleaded guilty to racketeering conspiracy and possession of a firearm in furtherance of a drug-trafficking crime. Months after pleading guilty, Thomas filed a *pro se* motion

16

to withdraw his guilty plea, which the district court denied.

We review "a district court's denial of a motion to withdraw a guilty plea for abuse of discretion and any findings of fact in connection with that decision for clear error." *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016) (internal quotation marks omitted). A defendant may withdraw a plea only if he "can show a fair and just reason for requesting the withdrawal," Fed. R. Crim. P. 11(d)(2)(B), which the defendant "bears the burden" of establishing, *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008) (internal quotation marks omitted). In assessing a defendant's stated reasons, a district court should consider, among other things, "(1) the amount of time that has elapsed between the plea and motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Id.*

Thomas's argument that his plea was "not taken knowingly and intelligently" is unpersuasive. Thomas Br. at 8. To begin, as the district court correctly observed, a significant amount of time – four months – had elapsed between Thomas's plea and his motion to withdraw. We have recognized that while a "swift change of heart may indicate a plea made in haste or confusion," the passage of months before a defendant attempts to withdraw a plea "strongly

17

supports the district court's finding that his plea was entered voluntarily." *Doe*, 537 F.3d at 213 (internal quotation marks omitted). The district court also appropriately took account of any "claim of legal innocence," *id.* at 210, noting that Thomas had made no such "showing" in his motion to withdraw the plea, Thomas App'x at 113. Finally, the record contradicts Thomas's claim that his plea was not "knowing" and "voluntary." Thomas Br. at 15. During the course of Thomas's guilty plea, the district court granted him extra time so that he could re-consider his plea with his lawyer. After that adjournment, the district court confirmed that (i) Thomas had "enough time and opportunity" to discuss his plea with his counsel, (ii) he was "satisfied" with counsel's representation, (iii) he had read the agreement and "discuss[ed] every aspect" of it with counsel, (iv) his allocution reflected his "own words," and (v) his plea was "knowing and voluntary." Thomas App'x at 163–64. This testimony carries a "strong presumption of accuracy," and we will not reverse where a defendant later produces "self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."[4] *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001).

---

[4] Thomas asserts for the first time on appeal that his counsel at sentencing misled him "into believing he had a realistic chance of receiving only five years of jail time." Thomas Br. at 13. But this belated argument contradicts the transcript of the hearing, where Thomas affirmed that no one had made any "promise" to him "as to what [his] sentence w[ould] be," Thomas App'x at

Because Thomas has put forth no other argument that satisfies the "stringent" standard that he must meet to withdraw a plea, we see no reason to disturb his conviction. *United States v. Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004).

**B.        Thomas's Sentence Was Not Substantively Unreasonable.**

Thomas's challenge to the substantive reasonableness of his sentence also fails. At sentencing, the district court correctly calculated Thomas's Guidelines range, with no objection, before sentencing him to an aggregate sentence of 248 months' imprisonment – the lowest end of the Guidelines range. Such a sentence is well within "the range of permissible decisions," *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (internal quotation marks omitted), and cannot be deemed "shockingly high" or "unsupportable as a matter of law," *Rigas*, 583 F.3d at 123.

*         *         *

We have considered Erskine's and Thomas's remaining arguments and find them to be without merit. Accordingly, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

160. And "[a] motion to withdraw a guilty plea may be denied . . . where the defendant's allegations merely contradict the record." *United States v. Torres*, 129 F.3d 710, 714 (2d Cir. 1997).